STEVEN W. HASKINS (State Bar No. 145395)
**HASKINS & ASSOCIATES, APC**
4045 BONITA ROAD, SUITE 206
BONITA, CALIFORNIA 91902-1336
TEL: (619) 479-4351
FAX: (619) 479-0337
Email: SteveH@Haskinslaw.com

PAUL W. BLAKE, ESQ. (State Bar No. 94963)
**LAW OFFICES OF PAUL BLAKE**
4045 BONITA ROAD, STE. 206
BONITA, CA 91902-1336
PHONE: (619) 479-4951
Fax:    (619) 470-0337
Email: Paulwblake@att.net

Attorneys for DOYMA VANESSA MICHEL

**UNITED STATES DISTRICT COURT FOR THE**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOYMA VANESSA MICHEL,  an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, a federal government agency, B. GIBBONS, an individual, E. GARZA, individual, G. GARCIA, an individual, SAFARILAND, LLC, a Delaware limited liability company, AND DOES 1 THROUGH 100, INCLUSIVE,<br><br>Defendants. | Case No.  **'16 CV 0277 GPC RBB**<br><br>**COMPLAINT FOR DAMAGES**<br><br>*JURY TRIAL DEMANDED* |

Now comes Plaintiff, by and through her attorneys, and demands damages from defendants, jointly and severally, and in support thereof sets forth the following allegations and claims:

-1-

**INTRODUCTION-PARTIES**

1.    Plaintiff Doyma Vanessa Michel ("PLAINTIFF") is a resident of the State of California and a citizen of the United States of America, residing in Escondido, California.

2.    Defendant United States Customs and Border Protection ("CBP"), is a Federal government agency operated by the United States Department of Homeland Security ("DHS").

3.    B. Gibbons ("OFC. GIBBONS") is a law enforcement officer working for CBP.

4.    E. Garza ("OFC. GARZA") is a law enforcement officer working for CBP.

5.    G. Garcia ("SOFC. GARCIA") is a law enforcement senior officer working for CBP.  The CBP, OFC. GIBBONS, OFC. GARZA AND SOFC. GARCIA are collectively referred to herein as the "GOVERNMENT DEFENDANTS."

6.    Defendant Safariland LLC ("SAFARILAND") is a Delaware limited liability company which does business, among other places, in the State of California and in the County of San Diego.

7.    The true names and capacities, whether individual, corporate or otherwise, of Does 1 through 100, are unknown to PLAINTIFF, who therefore sues said DEFENDANTS by such fictitious names and will ask leave to amend this complaint to show their true names and capacities when the same have been ascertained. PLAINTIFF, is informed and believes and thereon alleges that each of the Defendants designated herein as a Doe is in some manner legally responsible for the events and happenings herein referred to and proximately caused the injuries and damages to PLAINTIFF as herein alleged.

8.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each DEFENDANT was the agent and employee of each other DEFENDANT and, in doing the things hereinafter alleged, was acting in the scope of said agency and employment and with the permission and consent of each DEFEDANT, and each DEFENDANT ratified the acts of each other Defendant.

\\\\

**INTRODUCTION- JURISDICTION AND VENUE**

9.      This action arises under the Constitution and laws of the United States, including 42 USC 1983 and 1988 and the Federal Tort Claims Act (FTCA). This Court has jurisdiction over the subject matter of this complaint pursuant to 28 USC section 1331 (federal question statute) and 1346 (B) (United States agency as defendant), among other bases.  In addition, defendant SAFARILAND is a Delaware entity and PLAINTIFF is a California resident.  PLAINTIFF resides in San Diego County, California, which is within the jurisdiction of this court, and the acts and omissions which form the basis for this complaint occurred in San Diego County, California.

**EXHAUSTION**

10.      On January 20, 2015, Plaintiff submitted an Administrative Tort Claim to Defendant CBP and the DHS. CBP issued its final denial on August 26, 2015. Plaintiff has, therefore, exhausted all available administrative remedies.

**FACTS**

11.      On June 2, 2014, at approximately 2:10 PM, defendant OFC. GARZA approached PLAINTIFF while PLAINTIFF was waiting in line in her vehicle to cross into the United States at the San Ysidro Port of Entry in the City of San Diego, California. OFC. GARZA asked PLAINTIFF why she did not have a front license plate on her vehicle. Another agent, presumably Senior Agent GARCIA, opened the passenger door of the vehicle and saw a bottle of liquid in the glove compartment.

12.      Due to the unidentified liquid, OFC. GARZA directed that PLAINTIFF and her vehicle go to the Secondary Inspection Area at the CBP border crossing facility.  Once in the Secondary Inspection area, agents Garza and Gibbons took additional bottles of the same substance from PLAINTIFF's vehicle and performed drug tests on the liquid in the bottles and told PLAINTIFF that the liquid in the bottle tested positive for methamphetamine.   The drug test performed was a  Narco-Pouch 923 Methamphetamine Test Kit produced and marketed by defendant SAFARILAND.  PLAINTIFF vociferously denied that the liquid in the bottles was methamphetamines, explaining that it was a product used in the making of cheese. The product in question was, in fact, Rennet, a food enzyme made from calf stomach linings that is used

in the cheese making process.  Rennet is known as "Cuajo" in Spanish. The officers continued to refuse to retest the Cuajo nor did they send the liquid out to be properly analyzed in a CBP laboratory.  Based on the Narco-Pouch 923 field test alone the officers were convinced the substance in the bottles was methamphetamines and took action accordingly.

13.     Once PLAINTIFF was under arrest she was interrogated and thereafter transported to the Metropolitan Correctional Center Federal prison in downtown San Diego, where she was incarcerated from June 3, 2014 to August 23, 2014. PLAINTIFF was then transferred to the Otay Mesa/ San Diego prison facility run for the Federal government by the Corrections Corporation of America ("CCA"), where she remained until she was released on December 9, 2014. On October 14, 2014, while she was at the CCA facility, she was injured by another inmate while working in the kitchen, an injury she still suffers from today.

14.     PLAINTIFF also suffered other physical and emotional problems due to the wrongful imprisonment, including, but not limited to, headaches, skin problems, back pain, stomach pain (gastritis), migraine headaches, and anxiety attacks.

15.     During the period PLAINTIFF was imprisoned and up until days before she was released, the GOVERNMENT DEFENDANTS did not at any point take any steps retest the Cuajo which PLAINTIFF had been so adamant was a harmless cheese making ingredient.

**FIRST CLAIM FOR RELIEF**

**Violation of 4th and 14th Amendments to the United States Constitution**

**42 USC 1983 and 1988**

**Against all GOVERNMENT DEFENDANTS**

16.     PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

17.     As a direct and proximate result of the GOVERNMENT DEFENDANTS' conduct, committed under color of Federal and state law, PLAINTIFF was deprived of her right to be free from unlawful detention and the unreasonable use of force, to be secure in her personal property, and to due process of law. As a result, PLAINTIFF suffered and continues to suffer harm, in violation of her rights under the laws and Constitution of the United States of America, in

particular the 4th and 14th amendments thereto, and Title 42 USC section 1983.

18.    As a direct and proximate result of the acts of the GOVERNMENT DEFENDANTS, PLAINTIFF sustained pain, permanent injury, emotional distress and financial losses, all to her detriment.

19.    The actions described herein of the GOVERNMENT DEFENDANTS were so malicious, intentional and displayed with a reckless indifference to the rights, safety and well-being of PLAINTIFF, that imposition of punitive damages is warranted.

### SECOND CLAIM FOR RELIEF

**Failure to Train and Supervise/ 42 USC Section 1983 and Section 1988**

**Against GOVERNMENT DEFENDANTS**

20.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

21.    The GOVERNMENT DEFENDANTS and their agents have encouraged, tolerated ratified and been deliberately indifferent to the following patterns, practices and customs, as well as the need for adequate training, supervision and/or discipline in the area of:

A. The proper exercise of police power in the detention and custody of citizens who are able to explain possession of items that may appear unlawful.
B. The proper manner to conduct field tests on substances that are suspected to be illegal.
C. The proper manner to identify and take remedial action against government officers who failed to properly investigate matters prior to the arrest of individuals and subsequent to their being charged and detained.
D. The proper procedures to follow up on field tests to make sure they were not resulting in false positives.

22.    As a direct and proximate result of the above averments, PLAINTIFF has been deprived of her rights secured by the United States Constitution pursuant to 42 USC section 1983.

### THIRD CLAIM FOR RELIEF

**Pendant State Claims**

**Against all GOVERNMENT DEFENDANTS**

23.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

24.    The acts, omissions and conduct of GOVERNMENT DEFENDANTS as described

Complaint for Damages                                    5

herein constitute false arrest, false imprisonment and due process violations of the Constitution of the State of California under state law. This court has supplemental jurisdiction to hear and adjudicate these claims.

### FOURTH CLAIM OF RELIEF

**Federal Tort Claims Act - Negligence**

**Against all GOVERNMENT DEFENDANTS**

25.     PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

26.     The GOVERNMENT DEFENDANTS had a duty to act with reasonable care in exercising their civil arrest and detention authority, including investigating the true nature of products being brought into the United States before deciding to arrest someone.

27.     The GOVERNMENT DEFENDANTS breached this duty when they failed to properly perform and verify tests on the Cuajo product being brought into the United States by PLAINTIFF. The GOVERNMENT DEFENDANTS also breached this duty when the imprisoned PLAINTIFF from June 2, 2014 to December 9, 2014 without any further investigation or research whatsoever into the PLAINTIFF's insistence that the alleged methamphetamines were in fact, the Cuajo product.

28.     Said breaches of duty were the actual and proximate cause of PLAINTIFF's arrest and prolonged detention and the damage that resulted to her from such arrest and detention, including, but not limited, to emotional and physical distress and physical injuries.

29.     The GOVERNMENT DEFENDANTS should have foreseen that their acts and omissions would result in the unlawful arrest and detention of PLAINTIFF.

### FIFTH CLAIM FOR RELIEF

**Federal Tort Claims Act - False Imprisonment**

**Against all GOVERNMENT DEFENDANTS**

30.     PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

1   31.    The GOVERNMENT DEFENDANTS intentionally confined PLAINTIFF at the

2   San Diego Metropolitan Correction Center and the Otay CCA Prison.  This seven-month period

3   of detention was nonconsensual and without lawful privilege, as the GOVERNMENT

4   DEFENDANTS civil detention authority does not extend to innocent parties. Under the Federal

5   Tort Claims Act GOVERNMENT DEFENDANTS are liable for these acts and omissions.

6                           **SIXTH CLAIM FOR RELIEF**

7              **Federal Tort Claims Act - Negligent Infliction of Emotional Distress**

8                         **Against all GOVERNMENT DEFENDANTS**

9   32.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as

10  though fully set forth herein.

11  33.    The GOVERNMENT DEFENDANTS had a duty to act with reasonable care in

12  exercising their civil arrest and detention authority, including expeditiously investigating claims

13  that suspect products being brought into the United States were in fact legal products.

14  34.    GOVERNMENT DEFENDANTS breach this duty when they arrested and

15  imprisoned PLAINTIFF from June 2, 2014 to December 19, 2014, all without conducting a proper

16  investigation of the nature of the alleged contraband Cuajo product.

17  35.    The GOVERNMENT DEFENDANTS breach described herein actually and

18  proximately caused PLAINTIFF's arrest and prolonged detention and the damage that resulted

19  from her arrest and detention, including, but not limited to, serious emotional and physical

20  distress and injuries.

21  36.    The GOVERNMENT DEFENDANTS should have foreseen that their acts and

22  omissions would result in the unlawful detention of PLAINTIFF and would cause serious

23

24  emotional and physical harm.

25  37.    Under the Federal Tort Claims Act, the GOVERNMENT DEFENDANTS and

26  their officers are liable for these acts and omissions.

27  \\\\

28  \\\\

## SEVENTH CLAIM FOR RELIEF

### Federal Tort Claims Act - Intentional Infliction of Emotional Distress
### Against all GOVERNMENT DEFENDANTS

38.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

39.    The GOVERNMENT DEFENDANTS had a duty to act with reasonable care in exercising their civil arrest and detention authority, including to investigated claims of the legality of products brought into the United States.

40.    The GOVERNMENT DEFENDANTS breached this duty when they arrested and imprisoned PLAINTIFF from June 2, 2014 to December 19, 2014, without conducting an adequate, expeditious and proper investigation of the Cuajo product.

41.    Under the Federal tort claims act, defendant United States of America is liable for these acts and omissions.

## EIGHTH CLAIM FOR RELIEF

### Misrepresentation - Against SAFARILAND

42.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

43.    At all times mentioned herein, SAFARILAND designed, tested, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied and sold to distributors and retailers for sale including the CBP, the subject field drug test kits and/or their component parts as described herein.

44.    SAFARILAND represented to law enforcement agencies, including CBP and the United States government, that the field drug test kits would be of a certain quality, standard, reliability and accuracy. SAFARILAND'S representations were material facts and not merely opinion.

45.    SAFARILAND'S representations were made to law enforcement agencies and others expected to buy or use the product, including the CBP and the United States government.

46.     Law enforcement agencies who purchased these field drug test kits, including the CBP and United States government, knew of these representations, but did not know that they were false.

47.     Law enforcement agencies and those who purchase the products, including CBP and United States government, relied on the representations of quality and accuracy made by SAFARILAND by using the product consistent with the representations.

48.     SAFARILAND should have reasonably expected members of the general public, including PLAINTIFF, to be endangered by the use or handling of their products.

49.     The reliance upon these representations made by the SAFARILAND, by defendants was a substantial factor in causing PLAINTIFF's damages. Defendant SAFARILAND had superior knowledge of the field test kits such that they knew or should have known the test kits are not as reliable as marketed. As a proximate result of the misrepresentations made by SAFARILAND, PLAINTIFF sustained injuries and damages described in this complaint.

## NINTH CLAIM FOR RELIEF

### Breach of implied Warranty of Fitness - Against SAFARILAND

50.     PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

51.     At all times mentioned herein, SAFARILAND designed, tested, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied and sold to distributors and retailers for sale, the subject field drug test kits and/or their component parts as described herein.

52.     SAFARILAND have entered into contracts with law enforcement agencies, including CBP and the United States government, to sell field drug test kits for the particular purpose of providing probable cause for law enforcement agencies to make arrests.

53.     SAFARILAND new that the drug test kits sales to law enforcement agencies were to be used as a probable cause for arrest. SAFARILAND new that the field drug test kits were being sold for this particular purpose at the time of contracting.

54.    SAFARILAND knew that the field drug test kits were unreliable and not fit for such purpose.

55.    SAFARILAND had superior knowledge of the field drug test kits such that they knew or should have known the tests were not as reliable as marketed.

56.    SAFARILAND should have reasonably expected members of the general public, including PLAINTIFF, to be endangered by the use and or handling of its products. As a result of the breach of this implied warranty of fitness for a particular purpose, PLAINTIFF sustained injuries and damages as described herein.

## TENTH CLAIM FOR RELIEF
### Negligence - Against SAFARILAND

57.    PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

58.    At all times mentioned herein, SAFARILAND designed, tested, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied and sold to distributors and retailers for sale, the subject field drug test kits and/or their component parts as described herein.

59.    SAFARILAND owed a duty to the general public, including PLAINTIFF, to supply the field drug test kits it distributes with the quality and accuracy which they were contracted to provide.

60.    SAFARILAND owed a duty to the general public, including PLAINTIFF, to adequately warn law enforcement agencies that the field drug test kits in question should not to be used as probable cause for arrest.

61.    Adequate warnings should have been given to law enforcement agencies that the SAFARILAND product were not reliable.

62.    SAFARILAND should have reasonably expected members of the general public, including PLAINTIFF, to be endangered by the use and handling of their products.

Complaint for Damages                    10

63.     SAFARILAND breached its duty by promoting and selling the test kit products as accurate and reliable for the purpose of probable cause for arrest.

64.     The field drug test kits ultimately sold were not reliable and accurate enough to provide probable cause for arrest.

65.     SAFARILAND has shown a conscious disregard for the true dangers associated with its test kit products.

66.     As a proximate result of the negligence and false representations made by SAFARILAND, PLAINTIFF sustained the injuries and damages described in this complaint.

## ELEVENTH CLAIM FOR RELIEF

### Unfair Competition/ Violation of California Business and Professions Code 17200 et seq. Against SAFARILAND

67.     PLAINTIFF incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

68.     SAFARILAND'S conduct and false advertising constitute unfair business practices in violation of California Business and Professions Code § 17200 et seq.  Specifically, and as set forth herein, the acts and omissions of SAFARILAND constitute 1) unfair business acts and practices; 2) fraudulent business acts and practices; and 3) unfair, deceptive, untrue and misleading advertising.   PLAINTIFF has suffered a direct injury and has lost money and property as a result of the unfair competition; plaintiff suffered both physical and mental injuries and has lost income and possessions when she was wrongfully incarcerated.  PLAINTIFF seeks compensatory and statutory damages in light of said practices and an injunction against said practices.  Said remedies are necessary in order to deter unfair business practices and in order to provide restitution for said unfair business practices.

## PRAYER

As to the First Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

Complaint for Damages                    11

3.     For punitive damages according to proof.

As to the Second Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Third Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Fourth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Fifth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Sixth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Seventh Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Eighth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Ninth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

As to the Tenth Cause of Action:

1.     For general damages in the sum of $1,500,000;

2.     For hospital, medical, professional, and incidental expenses according to proof;

Complaint for Damages                    12

As to the Eleventh Cause of Action:

    1.    For compensatory damage according to proof;

    2.    For injunctive relief to halt defendant SAFARILAND'S wrongful conduct and false advertising as alleged herein; and

    3.    For civil penalties as allowed by law.

As to All Causes of Action:

    1.    For costs of suit incurred herein;

    2.    For reasonable attorney's fees; and

    4.    For such other and further relief as the Court may deem just and proper.

Dated: 02/02/2016            ***HASKINS & ASSOCIATES, APC***

          By:    /s/ Steven W. Haskins
               Steven W. Haskins, Esq.
               Attorneys for Plaintiff
               Doyma Vanessa Michel