STEVEN D. SMELSER (SBN 180602)
  ssmelser@yukelaw.com
BOBBIE N. EFTEKAR (SBN 240102)
  beftekar@yukelaw.com
LUCAS E. ROWE (SBN 298697)
  lrowe@yukelaw.com
YUKEVICH | CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone:   (213) 362-7777
Facsimile:   (213) 362-7788

Attorneys for Defendant
SAFARILAND, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOYMA VANESSA MICHEL, an individual,<br><br>                    Plaintiff,<br><br>        vs.<br><br>UNITED STATES OF AMERICA, B. GIBBONS, an individual, E.GARZA, an individual, G. BARCIA, an individual, SAFARILAND, LLC, a Delaware limited liability company, AND DOES 1 THROUGH 100, inclusive,<br><br>                    Defendants. | CASE NO. 3:16-cv-00277-GPC-AGS<br><br>**DEFENDANT SAFARILAND, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

1714854.1 / 128-004

3:16-cv-00277-GPC-AGS

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND.......................................................................2

    A.  Even Taking All Of Plaintiff's Claimed Facts As True, Plaintiff's Claims Fail As A Matter Of Law .........................................................2

    B.  Safariland's Narco Pouch Test 923 .............................................3

    C.  The Narco Pouch Test 923 Provided A Correct Positive Result ...........6

    D.  Customs and Border Patrol Are Highly Trained Officers....................8

    E.  Plaintiff's Experts' Testimony And Opinions Defeat Plaintiff's Attempted Motion For Summary Judgment.....................................9

        1.  Okorie Okorocha....................................................................9

        2.  Roger Clark .........................................................................10

        3.  Alison Vredenburgh ..............................................................11

III. Argument ......................................................................................12

    A.  The Narco Pouch Test 923 Is A Presumptive Test For Methamphetamine .................................................................12

    B.  It Is Not Against The Law For Police To Use A Field Drug Test To Establish Probable Cause ....................................................13

    C.  Safariland's Product Worked Correctly, Accurately, And As Intended ..............................................................................13

    D.  The Consumer Expectation Test Is Not Applicable To Failure To Warn .................................................................................14

    E.  Safariland Does Not Have A Duty To Warn......................................16

        1.  Safariland Does Not Have A Duty To Warn That Its Product Works Correctly, Accurately, And As Intended ..........16

        2.  Safariland Does Not Have A Duty To Warn Sophisticated Users..................................................................................18

        3.  Safariland Does Not Have A Duty To Warn The Employees of Learned Intermediaries ........................................21

    F.  Plaintiff Cannot Establish Causation.............................................23

IV. Conclusion ....................................................................................25

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Dow Chemical Co.,*
91 Cal.App.4th 698 (2001) ........................................................16

*Barker v. Lull Engineering Company, Inc.,*
20 Cal.3d 413 (1978) ...............................................................15

*Bell v. Bayerische Motoren Werke Aktiengesellschaft,*
181 Cal.App.4th 1108 (2010) ..................................................16

*Bresnahan v. Chrysler Corp.,*
32 Cal.App.4th 1559 (1995) ....................................................16

*Brown v. Superior Court,*
44 Cal. 3d 1049 ......................................................................15

*California Ass'n of Bioanalysts v. Rank,*
577 F.Supp. 1342 (D.C. Cal. 1983) ..........................................4

*Chavez v. Glock, Inc.,*
207 Cal.App.4th 1283 (Cal.App.2d Dist. 2012) .............. 18, 20, 21

*Escola v. Coca Cola Bottling Co.,*
24 Cal.2d 453 (1944) ..............................................................15

*Fierro v. International Harvestor Co.,*
127 Cal.App.3d 862 (Cal.App 2d Dist. 1982) ...........................18

*Forest v. Vitek, Inc.,*
884 F.Supp. 378 (D. Nev. 1993)...........................................21, 22

*Johnson v. American Standard, Inc.,*
43 Cal.4th 56 (2008) ......................................................... *passim*

*Johnson v. Honeywell Internat. Inc.,*
179 Cal.App.4th 549 (Cal.App.2d Dist. 2009) ................ 18, 19, 21

*Lee v. Electric Motor Division,*
169 Cal.App.3d 375 (Cal.App.2d 1985)................................21, 22

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

*Midgley v. S.S. Kresge Co.,*
   55 Cal.App.3d 67 (1976) ...................................................................................16

*State ex rel. Miller v. Tucson Assocs. Ltd. P'ship,*
   165 Ariz. 519 (Ct. App. 1990) .............................................................................4

*Persons v. Salomon North America, Inc.,*
   217 Cal.App.3d 168 (Cal. App. 3d Dist. Jan. 18, 1990).................... 14, 16, 20, 21

*Rosburg v. Minnesota Mining & Mfg. Co.,*
   181 Cal.App.3d 726 (1986) ..............................................................................16

*Saller v. Crown Cork & Seal Company,*
   187 Cal.App.4th 1220 (2010) ...........................................................................15

*Sara Lee Corp. v. Homasote Co.,*
   719 F.Supp. 417 (D. Md. 1989).....................................................................22, 23

*Strahan v. Coxe,*
   939 F.Supp. 963 (D.C.Mass.1996) ......................................................................4

*Town of Bruceton v. Arnold,*
   818 S.W.2d 347 (Tenn. Ct. App. 1991).................................................................4

*U.S. v. Rainbow Family,*
   695 F.Supp. 314 (D.C.Tex.1988).........................................................................4

*United States v. M'Biye,*
   655 F.2d 1240 (D.C. Cir. 1981)...........................................................................4

*Webb v. Special Electric Co., Inc.,*
   63 Cal. 4th 167 (2016) ................................................................. 18, 19, 20, 21

*West v. Johnson & Johnson Products, Inc.,*
   174 Cal.App.3d 831 (1985) ...........................................................................16, 17

*Zambrana v. Standard Oil Co.,*
   26 Cal.App.3d 209 (1972) .................................................................................23

**Other Authorities**

Fed. R. Evid. 902(5).................................................................................................4

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

# I.    **INTRODUCTION**

Plaintiff's attempt to file a motion for partial summary judgment is a waste of this court's time as Plaintiff's claims fail as a matter of law.  Plaintiff's own experts testified that there is no defect in Safariland's product, that it worked accurately, as intended, and as expected.   In fact, many of Plaintiff's statements in her brief are in direct contradiction of her own expert's opinions and testimony:

<u>Plaintiff's toxicologist/chemist expert Okorie Okorocha:</u>

Q    Okay.  Do you have any opinion that the NarcoPouch product worked incorrectly in this case?
A    No. [Deposition of O. Okorocha ("Okorocha Depo.") at 84:21-23, attached as Exhibit N to Declaration of Steven D. Smelser in Support of Opposition to Plaintiff's Motion for Partial Summary Judgment Against Safariland ("Smelser Decl.")]

Q    Okay.  So -- then let's go back to my previous question of, do you have an opinion of something Safariland should or should not have done in this case?
...
THE WITNESS:  No. [*Id.* at 87:8-13]

Q    Simon's reagent test or sodium nitroprusside test, is that an appropriate and validated test for the presumptive identification          of methamphetamine?
A    For presumptive identification. [*Id.* at 89:17-20]

Q    So we were talking about -- you're saying that you can't use a screening test to detain someone.  Is that what you're trying to say?
A    If there is a short detention while they do the testing, that would be normal.
Q    Okay.  How -- what is a short detention?
A    A day or two.
Q    Okay.  So your problem is not that they used a screening test in deciding or in determining whether to detain her or not?
A    That's -- yeah.  That's -- that's not –there's a whole a lot of other things that go into whether you're detaining somebody. [*Id.* at 92:3-15]

Q    How is someone reading this supposed to know that a screening test is unconfirmed?
A    By definition, it's unconfirmed if it hasn't been tested by a sophisticated instrument.
Q    So that's common knowledge?
A    Yes.
Q    It's expected to be known?
A    Yes. [*Id.* at 101:23-102:5]

Q    Okay.  That's fine. It's normal for a screening test to be used when analyzing a controlled substance?
A    Yes. [*Id.* at 103:3-6]

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Q    Okay.  But you're not offering an opinion that there is anything unacceptable about doing a sodium nitroprusside field test, correct?
A    Correct. [*Id.* at 112:1-4]

Q    Okay.  So Safariland doesn't control what the DEA lab does, correct?
A    Correct. [*Id.* at 109:18-20]

Q    You don't have any opinions on what Safariland could do -- could have done to address the turnaround time that you just spoke of?
A    Right.  That wouldn't be a -- something they would decide. [*Id.* at 107:20-24]

Plaintiff's police practices expert Roger Clark:

…Now, Gibbons, as you saw in my report, I'm not critical of Gibbons using the test.  I think it – the test worked -- and you saw the footnote.
Q    Yeah.
A    The test did not fail.  The test -- the chemical is designed to react to something that could be akin to methamphetamine or it could be methamphetamine and other contraband. So it didn't fail, and based on that plus other things that are occurring, the fact that people do try to smuggle through that portal, et cetera, I'm not critical of him detaining Ms. Michel at all.  So my quote of his deposition testimony is that he did not under -- he did not understand the implications of presumptive, but he did use it and it was used -- he used it properly and it did give him the proper indicator for the detention. [Deposition of R. Clark ("Clark Depo.") at 17:1-17, Ex. J to Smelser Decl.]

Plaintiff's design defect claim fails based upon her own experts' opinions. Safariland is entitled to judgment as a matter of law not only on its own motion for summary judgment, but on Plaintiff's motion for partial summary judgment as well. Even taking all of Plaintiff's claimed facts as true, Plaintiff's claims fail as a matter of law.

## II.    FACTUAL BACKGROUND

### A.    Even Taking All Of Plaintiff's Claimed Facts As True, Plaintiff's Claims Fail As A Matter Of Law

Plaintiff's statement of facts is largely filled with irrelevant and immaterial information that do not create a triable issue of fact, and do not change that Safariland is entitled to summary judgment as a matter of law. Safariland hereby incorporates and references its Memorandum of Points and Authorities and Statement of Undisputed Facts in support of its Motion for Summary Judgment. Safariland will only provide a brief summary below for the Court's convenience of

3:16-cv-00277-GPC-AGS

the facts concerning Safariland's product and its accurate performance, but otherwise, attempt to only provide additional facts and information as opposed to repeating facts already covered in its Motion for Summary Judgment.

### B.    Safariland's Narco Pouch Test 923

As discussed in Safariland's Motion for Summary Judgment, the Safariland Narco Pouch field drug test kits are a product line of kits that allow law enforcement agents and officers to conduct presumptive color tests approved by the United States government. Declaration of Allen Miller in Support of Safariland's Motion for Summary Judgment ("Miller Decl."), Dkt. No. 50-2 at ¶ 4; Okorocha Report at p. 3 (Ex. I to Smelser Decl.); Deposition of A. Ambriz ("Ambriz Depo.") at 13:20-14:22, 48:18-21, 57:8-23 (Ex. E to Smelser Decl.); Deposition of J. Malone ("Malone Depo.") at 67:24-69:11(Ex. G to Smelser Decl.); Report of A. Duggan at 5, 8-11 (Ex. M to Smelser Decl.); *see* Scientific Working Group for the Analysis of Seized Drugs,[1] Supplemental Document SD-2 For Part IVB: Quality Assurance/Validation of Analytical Methods 33 (SWGDRUG 2006) (hereinafter "SWGDRUG-Suppl. Document"); Scientific Working Group for the Analysis of Seized Drugs, Methamphetamine (Mar. 15, 2005) http://www.swgdrug.org/Monographs/ METHAMPHETAMINE.pdf, last visited June 27, 2017 (hereinafter "SWGDRUG-Methamphetamine"); Scientific Working Group for the Analysis of Seized Drugs, p-Methoxymethamphetamine (Aug. 9, 2005) http://www.swgdrug.org/Monographs/p-METHOXYMETHAMPHETAMINE.pdf, last visited June 27, 2017 (hereinafter

---

[1] The Scientific Working Group for the Analysis of Seized Drugs is an organization formed by the U.S. Drug Enforcement Administration and the Office of National Drug Control Policy. Ambriz Depo. at 13:20-14:21,15:3-9; Scientific Working Group for the Analysis of Seized Drugs, History, http://swgdrug.org/history.htm, last visited July 17, 2017 (Ex. R to Smelser Decl.); Scientific Working Group for the Analysis of Seized Drugs, BYLAWS, (SWGDRUG 2014) (Ex. S to Smelser Decl.). This committee sets minimum standards for the forensic examination of seized drugs domestically and internationally. *Id.*

"SWGDRUG-MethOxyMethamphetamine"); United Nations Office on Drugs and Crime, Recommended Methods For The Identification And Analysis Of Amphetamine, Methamphetamine, And Their Ring-Substituted Analogues In Seized Materials 18-20 (United Nations 2006) (hereinafter "UN Manual").[2] Presumptive tests are screening procedures used by laboratories and law enforcement "to provide an indication of the presence or absence of drug classes in a test sample and quickly eliminate negative samples." UN Manual at 17. Pursuant to the guidelines and procedures set out by the UN, SWGDRUG, and DEA, a forensic lab analysis is to be performed using two test methods. Ambriz Depo. at 13:20-14:21, 57:14-23; *see also* UN Manual at 17. The first method is a screening or presumptive method and the second must be a confirmatory method. *Id.*

The DEA, SWGDRUG, and UN have determined that the proper screening or presumptive color test for methamphetamine is the Simon's Reagent test, also known as a Sodium Nitroprusside test. *See* UN Manual at 18-20; SWGDRUG-Suppl. Document at 33; SWGDRUG-Methamphetamine; SWGDRUG-MethOxyMethamphetamine. Okorocha Depo. at 89:17-20,101:2-13; Report of A. Duggan at 5, 8-15. This presumptive color test is used as a test for secondary amines, such as methamphetamine and methylenedioxymethamphetamine (MDMA) *Id.*; Ambriz Depo. at 63:6-64:18, 86:23-87:7, 96:23-97:5; Malone Depo. at 51:4-18,61:21-25; Okorocha Report at p. 3. The United States government has determined that a positive result is a presumptive indication of the presence of

---

[2] These publications are published by government agencies and committees and are self-authenticating. Fed. R. Evid. 902(5); *United States v. M'Biye*, 655 F.2d 1240, 1242 (D.C. Cir. 1981); *U.S. v. Rainbow Family*, 695 F.Supp. 314 (D.C.Tex.1988); *California Ass'n of Bioanalysts v. Rank*, 577 F.Supp. 1342, 1355 (D.C. Cal. 1983); *Strahan v. Coxe*, 939 F.Supp. 963, 968 (D.C.Mass.1996); *Town of Bruceton v. Arnold*, 818 S.W.2d 347, 348 (Tenn. Ct. App. 1991); *State ex rel. Miller v. Tucson Assocs. Ltd. P'ship*, 165 Ariz. 519, 520 (Ct. App. 1990). For the court's convenience the cited publications are attached as Exs. O,P,Q,T to the Smelser Decl..

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

methamphetamine or MDMA. *See* UN Manual at 18-20; SWGDRUG-Suppl. Document at 33; SWGDRUG-Methamphetamine; SWGDRUG-MethOxyMethamphetamine; Ambriz Depo. at 57:8-58:6.

The Safariland product at issue in this action is the Narco Pouch 923 Sodium Nitroprusside Test. The Narco Pouch products have simply taken the presumptive color tests used and approved by government agencies for over 50 years and provided a convenient portable packaging method so that agents and officers can perform such approved presumptive color tests out in the field without having to keep and/or bring spot plates, petri dishes, and bottles of chemicals and reagents in the trunks of their vehicles or otherwise when working out in the field. Clark Depo. at 57:17-22; Miller Decl. at ¶ 4; Okorocha Report at p. 3; Malone Depo. at 63:24-64:12, 53:16-24, 68:8-69:11; Report of A. Duggan at 5, 8-11; Ambriz Depo. at 13:20-14:21, 33:8-21, 39:10-40:4, 48:18-21, 57:8-58:6, 63:6-64:18, 86:23-87:7, 96:23-97:12; Okorocha Depo. at 89:17-20, 101:2-13.  Safariland did not invent the Sodium Nitroprusside test, did not discover that it could be used to presumptively identify methamphetamine, nor did it present a new method of testing to law enforcement agencies and their officers, agents, and other employees. Miller Decl. at ¶ 6; Report of A. Duggan at 8-10. Safariland merely manufactures and sells a test that law enforcement use and have used for decades to presumptively identify methamphetamine. *See* UN Manual at 18-20; SWGDRUG-Suppl. Document at 33; SWGDRUG-Methamphetamine; SWGDRUG-MethOxyMethamphetamine; Clark Depo. at 57:17-22; Malone Depo. at 51:4-12,53:16-24; Report of A. Duggan at 5, 8-15; Miller Decl. at ¶ 4.

Law enforcement agencies use the Narco Pouch products according to their agencies' procedures and guidelines as well as the law of the jurisdiction within which they operate. Miller Decl. at ¶ 7; Clark Depo. at 17:22-19:13, 86:1-87:12; Ambriz Depo. at 39:10-40:4, 107:21-108:6, 153:3-154:1; Malone Depo. at 53:16-54:24, 68:8-69:11. As such, while the tests are not intended, or marketed, as being

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

sufficient to form probable cause on the results alone, Safariland does not have the authority to mandate law enforcement policy and procedures, nor the laws of different jurisdictions throughout the world. *See* Clark Depo. at 17:18-19:13; Ambriz Depo. at 153:3-154:1; Malone Depo. at 54:13-25. And, it is not against the law to use a field drug test kit to establish probable cause. Clark Depo.at 17:1-17.

Safariland makes available training, training materials, and even instructor training materials to all customers. Miller Decl. at ¶ 7, Ex. A. Safariland's training materials teach that an officer should have additional facts that warrant administering the Narco Pouch tests in the first instance, such as: behavior of the suspect in possession of the suspected narcotic, packaging, appearance, smell, etc. *Id.* In fact, Safariland's training materials state that, "a positive predictable color change is only a *presumed* positive result for the suspected compound: in no way should the test results be considered a confirmation of identification." *Id.* at ¶ 8, Ex. A. The same training document further states that, "it is important to note that all test results, positive or negative, should be confirmed by the crime laboratory." *Id.*

The Narco Pouch 923 Test box contains labels stating that it is a "presumptive test" in multiple places, a term that is common knowledge among all officers and agents as each and every suspect detained, arrested, investigated, charged, etc. is always "presumed" innocent until proven guilty. Ex. B to Miller Decl.; Clark Depo. at 58:9-14; Malone Depo. at 53:10-15, 64:13-65:1. The Narco Pouch product instructional insert states, "Always retain sufficient sample of suspect material for evidential analysis by the forensics laboratory." Miller Decl. at Ex. C, Report of A. Duggan at 6, 11.

**C.    The Narco Pouch Test 923 Provided A Correct Positive Result**

CBP Officer Gibbons performed field tests on the seized substances from Michel's vehicle. Deposition of Brandon Gibbons ("Gibbons Depo.") at 12:20-13:1, 13:23-14:1 (Ex. C to Smelser Decl.). Officer Gibbons received a positive result on all four bottles of suspected methamphetamine. *Id.* at 20:25-21:6. Officer

6

Gibbons arrested Michel. *Id.* at 13:20-22, 21:7-9. Officer Garza's involvement was preliminary. He did not arrest Michel. Deposition of Eduardo Garza ("Garza Depo.") at 46:9-47:14 (Ex. B to Smelser Decl.). He was not involved in the testing of the three additional bottles of suspected methamphetamine found in Michel's vehicle or in the confirmatory testing that followed. *Id.* at 51:17-24, 46:9-47:14, 49:1-21. Homeland Security Investigation ("HSI") Agents recovered another 15 bottles of suspected methamphetamine which also tested positive for the properties of methamphetamine. Inv. Report at Bates USA_0028-0029, 0038-0039, 0051-0061 (Ex. A to Smelser Decl.); Deposition of Zachary Bulman ("Bulman Depo.") at 16:21-24, 56:4-14, 58:1-8, 60:7-61:5 (Ex. D to Smelser Decl.).

On June 9, 2014 at 10:30 a.m., DEA Forensic Chemist Alexandra Ambriz responded to the CBP vault at Otay Mesa, California in order to test and take samples of the bottles seized from Michel's vehicle and her storage unit. Inv. Report at Bates USA_0028-0029; Ambriz Depo. at 36:16-25, 38:24-39:14. Her field tests also indicated a presumptive indication for the presence of methamphetamine. Inv. Report at Bates USA_0028-0029; Ambriz Depo. at 66:6-67:23.

Ambriz begun her laboratory testing of the samples taken from the Otay vault in August 2014. Ambriz Depo. at 56:20-57:7. She again conducted a Sodium Nitroprusside color test on the samples, but this time used bottles of reagents and a spot plate as opposed to Safariland's Narco Pouch 923 Test. *Id.* at 57:8-13, 59:22-60:1. She again received the same result: a presumptive indication for the presence of methamphetamine. *Id.* at 59:3-7, 60:14-17.

Ambriz conducted confirmatory gas chromatograph mass spectrometer tests on each of the samples of the suspected liquid methamphetamine, which confirmed the presence of a secondary amine in the substance and accounts for the multiple positive results received on the Narco Pouch 923 Sodium Nitroprusside Test and the Sodium Nitroprusside test prepared *de novo* in the laboratory. *Id.* at 83:1-13, 94:11-17; Report of A. Duggan at 6, 16-17.

**D.  Customs and Border Patrol Are Highly Trained Officers**

Law enforcement agencies provide their own robust training to each and every officer and agent. Excerpt of U.S. Dept. of Homeland Security, Budget-in-Brief for 2017 at pp. 75, 77 (Ex. N to Smelser Decl.); Clark Depo. at 15:19-23, 17:18-19:13, 20:17-22, 86:1-87:12; Malone Depo. at 21:17-23:6, 52:10-53:15, 64:13-65:1; Ambriz Depo. at 12:9-16:17, 17:5-19:24, 20:9-11; Bulman Depo. at 11:9-13:14; Gibbons Depo. at 9:8-23, 10:23-12:7, 14:13-24, 23:10-23, 37:7-38:3, 40:8-18; Garza Depo. at 6:21-9:18, 10:17-11:15, 40:18-41:19, 45:18-23, 46:9-15, 49:1-11; Miller Decl. at ¶ 10.  Federal Law Enforcement Training Center ("FLETC") is a federally accredited institution whose primary purpose is to train federal law enforcement officers. Smelser Decl. at Ex. N. It is a robust organization with more than 1,000 personnel charged with the duty of training each and every federal officer and agent. *Id.* Publicly available information for FLETC shows that in fiscal year 2015, it trained 65,341 law enforcement officers, including 7,344 state and local law enforcement officers, and 1,286 international law enforcement personnel. *Id.*

Officers Garza and Gibbons testified that their training before officially becoming CBP officers lasted approximately five months at FLETC. Garza Depo. at 7:1-9:18; Gibbons Depo. at 9:8-20, 10:23-12:7.  They both further testified that their training included classwork in investigations, instruction on the legal framework under which they operate, and the use and interpretation of field drug test kits. *Id.* Officer Gibbons, who is **the** officer that made the decision and did in fact arrest Michel, stated that he received three to four days of training on field drug tests. Gibbons Depo. at 10:23-12:7; 40:8-16.  He was taught that field tests are not confirmatory and the suspected substance must go to the DEA lab to be further tested. *Id.* Officer Garza, likewise testified that he knew field drug tests were not considered definitive until a laboratory test confirmed the presence of a controlled substance. Garza Depo. at 49:1-11.

3:16-cv-00277-GPC-AGS

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Special Agent Bulman testified that he attended training at FLETC as well for approximately six months. Bulman Depo. at 12:9-25. His training included field drug test kits, although Bulman did not conduct any of the field drug tests in this case. *Id.* Bulman additionally had on-the-job training and continuing training throughout his career with HSI. *Id.* at 14:13-23. Bulman knew that the presumptive tests were going to be confirmed by a laboratory. *Id.* at 54:24-55:7. In fact, he is the one that called the DEA to request an analyst come to the Otay vault to take samples and perform the confirmatory testing. *Id.* at 61:12-62:8.

DEA Forensic analyst Alexandra Ambriz attended a six month in-house training program at the DEA laboratory in Chicago, Illinois and a one-month training in Quantico, Virginia relating to the analysis of controlled substances as well as other matters related to her job as a forensic analyst. Ambriz Depo. at 12:9-13:2. Ms. Ambriz has additionally had continuing training throughout her career with the DEA. *Id.* at 11:22-12:4, Ex. 1. Ms. Ambriz is aware that a Sodium Nitroprusside test is presumptive and requires confirmation. Ambriz Depo. at 57:8-58:6.

DEA Lab Director James Malone further testified that he himself has personally given Customs and Border Patrol Officers training on how to conduct field drug tests, including the Narco Pouch products. Malone Depo. at 52:10-53:15, 64:13-65:1. He specifically testified that he has explained to CBP Officers that the tests are presumptive and has explained the meaning of presumptive. *Id.* He has lectured that the tests are not definitive. *Id.* Dr. Malone has demonstrated to CBP Officers that something that is not a controlled substance could produce a positive color change in the test and that it simply tests for a class of compounds. *Id.*

**E.    Plaintiff's Experts' Testimony And Opinions Defeat Plaintiff's Attempted Motion For Summary Judgment**

1.    Okorie Okorocha

Plaintiff's expert Okorie Okorocha is a toxicologist who was retained to

provide opinions as to the Narco Pouch Test 923, the chemistry behind the test, the officers use of the test in this action, and the laboratory testing that was performed by the DEA in this action. Okorocha Report (Ex. I to Smelser Decl.); Okorocha Depo. at 26:12-28:7,83:3-84:9. It was clarified multiple times on the record that he was not offering any opinions as to training the officers received. Okorocha Depo. at 79:23-80:22,86:1-87:6. Mr. Okorocha agrees that the Narco Pouch 923 Test worked correctly in this case. *Id.* at 29:15-20, 84:21-23, 87:8-13. Mr. Okorocha agrees that the use of field tests are appropriate. *Id.* at 89:17-20, 101:6-13, 103:4-6, 112:1-4. Mr. Okorocha agrees that it is appropriate to arrest someone based upon a field drug test. *Id.* at 92:3-15. Mr. Okorocha agrees that the Narco Pouch 923 Test is a Simon's reagent or sodium nitroprusside test and that such tests are appropriate and validated for the presumptive identification of methamphetamine. *Id.* at 89:17-20, 101:9-13. Mr. Okorocha agreed that nothing Safariland did or did not do contributed to Ms. Michel's injuries in this case. *Id.* at 87:8-13, 107:20-14. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Mr. Okorocha's opinions were simply that the DEA laboratory should have conducted their confirmatory testing more quickly. *Id.* at 90:10-20, 107:6-24. However, he agreed that there is nothing Safariland could do to change the time it took the DEA to conduct its laboratory testing. *Id.* at 109:18-20, 107:20-24.

### 2. Roger Clark

Plaintiff's expert Roger Clark is a former police officer who was retained to provide opinions on police procedure. Clark Depo. at 7:8-20, Ex. 1. Mr. Clark agreed that the Narco Pouch Test 923 is an appropriate test and that there is nothing wrong with CBP's use of the test. *Id.* at 17:1-17, 10:25-11:1, 27:25-28:17. Mr. Clark agreed that the test performed correctly and that the test did not fail. *Id.* at 17:1-17, 27:25-28:17. Mr. Clark agreed that the arresting officer used the test correctly. *Id.* at 17:1-17, 27:25-28:17. Mr. Clark agreed that it was appropriate for CBP to arrest

10

3:16-cv-00277-GPC-AGS

and detain Ms. Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17.

Mr. Clark further testified that it is common knowledge that a field test is presumptive and it must be confirmed by a laboratory. *Id.* at 47:15-24, 58:9-14. He agreed field tests have been used for over 50 years by law enforcement. *Id.* at 57:17-22. He agreed that law enforcement receive extensive training, including for the usage, policies and procedures with respect to using narcotic field tests. *Id.* at 17:22-19:13, 86:1-87:12.

### 3. Alison Vredenburgh

Plaintiff's expert Alison Vredenburgh has degrees in psychology and holds herself out to be an expert in Human Factors. Deposition of Alison Vredenburgh ("Vredenburgh Depo.") at Ex. A (Ex. L to Smelser Decl.). She has no expertise in chemistry or toxicology and has no expertise in police practices and procedures, the determination of probable cause, appropriate procedures for arrests, detaining suspects, the use of field drug tests, the analysis of suspected substances, or the timing of federal laboratories in conducting testing. *Id.* at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10. Plaintiff's cite to Ms. Vredenburgh's report and testimony to support the position that it was not appropriate for CBP to arrest Plaintiff. Ms. Vredenburgh is not qualified to make such a statement. *Id.* at 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-16, and Ex. A. Indeed, that is a false statement per Plaintiff's own police practices expert and toxicologist expert. Clark Depo. at 7:1-17, 27:25-28:17; Okorocha Depo. at 92:3-15. Plaintiff's cite to Ms. Vredenburgh to claim that Safariland's product should contain warnings that would inform CBP that the test is presumptive. The box already states the test is "presumptive" in three places. Miller Decl. at Ex. B. Further, Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14. Plaintiff's cite to Vredenburgh to claim that a different warning would have caused CBP to rush the

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

confirmatory testing. However, Plaintiff's own expert retained to opine about the timing of the DEA's laboratory testing testified that Safariland has no control over the timing of the DEA laboratory's testing and that there is nothing Safariland did or did not do that contributed to the issue of the timing on the DEA's laboratory testing. Okorocha Depo. at 109:18-20, 107:20-24. Further, CBP, who conducted the testing and made Michel's arrest, did not have any involvement in submitting the seized substances to the laboratory, ordering the confirmatory testing, or requesting a rush on the testing. Bulman Depo. at 61:12-62:8, 67:24-68:18; Garza Depo. at 46:18-47:7, 49:12-21; Gibbons Depo. at 13:20-14:1, 22:1-8, 20:25-21:5. And, the Officer who conducted the field testing and made the arrest specifically stated he already knew the tests were presumptive and needed confirmation by a lab:

> Q    Were you taught anything else regarding the meaning of those tests?
> A    That they're only field tests. It's not 100 percent accurate. It still has to go through DEA lab. [Gibbons Depo. at 11:22-12:1]
> …
>
> Q    You stated earlier that when you were at FLETC, you were instructed that the tests are -- I forget the phrase you used, but presumptive only. It wasn't conclusive that this was actually methamphetamines, but it was presumptive.
> A    Yes. [*Id.* at 40:8-16].

## III.    Argument

### A.    The Narco Pouch Test 923 Is A Presumptive Test For Methamphetamine

Plaintiff spends much time claiming that Safariland incorrectly "advertises" or calls its product a presumptive test for methamphetamine. The Narco Pouch Test 923 *is* a presumptive test for methamphetamine. *See* UN Manual at 18-20; SWGDRUG-Supplemental Document at 33; SWGDRUG-Methamphetamine; SWGDRUG-MethOxyMethamphetamine; Okorocha Depo. at 89:7-20, 101:2-13; Report of A. Duggan at 5, 8-15. This fact is not based upon Safariland's interpretation or opinion; it is a fact established by science, the scientific

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

3:16-cv-00277-GPC-AGS

community, and the government. *Id.* It is a fact unequivocally and repeatedly established by Plaintiff's own experts. Okorocha Depo. at 89:7-20, 101:2-13; Clark Depo. at 17:1-17, 10:25-11:1, 27:25-28:17. Safariland is at a loss as to why Plaintiff continues to make disingenuous arguments that her experts have already explained to be a scientific truth. *Id.*

**B.    It Is Not Against The Law For Police To Use A Field Drug Test To Establish Probable Cause**

Plaintiff's arguments are based on the assumption that it is incorrect or against the law to use a Narco Pouch product or any other field drug test to establish probable cause. ***There is no law against using a field drug test kit to establish probable cause for arrest.*** Clark Depo. at 17:1-17, 10:25-11:1, 27:25-28:17, 52:17-21. An officer is free to use a Narco Pouch product, or any other field drug test, to establish probable cause for arrest if that is the policy of the government agency that he/she works for. Safariland may suggest to users that it should not be used for such purposes, but the government and its officers and agents have the authority to perform their job in accordance with the law and the policy and procedures set out by the agency under which they work. Plaintiff's constant discussion of the claim that the CBP Officer arrested Michel based solely on a positive result of the Narco Pouch 923 Test is completely irrelevant. Her own expert agrees that it was proper to arrest Michel. *Id.*

**C.    Safariland's Product Worked Correctly, Accurately, And As Intended**

The undisputed evidence establishes that Safariland's product (a Simon's Reagent/Sodium Nitroprusside test) was accurate, reliable and worked as intended, providing the same response as the DEA's own Simon's Reagent/Sodium Nitroprusside test performed in the lab *de novo*. Ambriz Depo. at 59:3-7, 60:14-17, 83:1-13, 94:11-17; Report of A. Duggan at 6, 16-17; Report of R. Clark at p. 4, fn. 1 (Ex. K to Smelser Decl.); Okorocha Depo. at 29:15-20, 84:21-23, 89:17-20, 101:9-

13

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

13; Clark Depo. at 17:1-17.

In this case, officers utilized the Narco Pouch 923 Sodium Nitroprusside Test in the field and received positive results each and every time the Test was conducted. *See supra* Section IIC. DEA Forensic Chemist Alexandra Ambriz performed a Sodium Nitroprusside test in the laboratory using the chemicals from scratch, as opposed to Safariland's products, and also obtained the same result for a total of 16 times: a positive indication for the presence of a secondary amine. Ambriz Depo. at 57:8-60:17. Ms. Ambriz then conducted her confirmatory testing of Gas Chromatography, as required under DEA and SWGDRUG guidelines, and confirmed the presence of a secondary amine within each of the 16 samples she tested. Ambriz Depo. at 83:1-13, 94:11-17; Report of A. Duggan at 6, 16-17. The undisputed evidence establishes that Safariland's Narco Pouch Test 923 performed consistently with the Sodium Nitroprusside test administered *de novo* and correctly detected a secondary amine that was in fact contained in the suspected material. *Id.*; Ambriz Depo. at 60:14-17. Furthermore, Plaintiff's own experts admit that the Narco Pouch 923 Test performed accurately, reliably, as intended, and was not defective. Report of R. Clark at p. 4, fn. 1; Okorocha Depo. at 29:15-20, 84:21-23, 89:17-20, 101:9-13; Clark Depo. at 17:1-17. Proof that the product malfunctioned is essential to establish liability in a product liability action. *Khan*, 217 Cal.App.3d at 855. Plaintiff cannot establish that the Narco Pouch 923 Test malfunctioned and as such her Ninth claim for product liability fails as a matter of law. *Id.* at 854-856. The Court should deny Plaintiff's Motion on this basis alone.

**D.    The Consumer Expectation Test Is Not Applicable To Failure To Warn**

Plaintiff's motion and notice of motion is directed only to the Ninth Claim for Product Liability. *See* Plaintiff's Notice of Motion and Motion, Dkt. No. 53. The Ninth Claim for Product Liability fails to include a claim for failure to warn. *See* Second Amended Complaint ("Compl."), Dkt No. 22, at p. 10. It is only for design

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

defect. *Id.* As such, all portions of Plaintiff's memorandum of points and authorities regarding failure to warn must be stricken as they are not properly raised in her motion and notice of motion. Further, Plaintiff incorrectly uses the Consumer Expectation Test to argue a claim for failure to warn. The Consumer Expectation Test is applicable to design defect, which Safariland has already established its product worked accurately without any defect. *Saller v. Crown Cork & Seal Company,* 187 Cal.App.4th 1220, 1231 (2010); *Barker v. Lull Engineering Company, Inc.,* 20 Cal.3d 413, 423 (1978). The Consumer Expectation Test is not applicable to a failure to warn claim. *Id.*

Further, the standard for determining the "consumer" under the consumer expectation test is not the individual user, but the hypothetical reasonable consumer. *Saller,* 187 Cal. App.4th at 1232. In this case, that would be the sophisticated and highly trained government agency. The Consumer Expectations Tests does not apply where the plaintiff has no interaction with the product and the product is not defective. *Brown v. Superior Court,* 44 Cal. 3d 1049, 1061. In *Brown,* the Supreme Court held that the consumer expectation test is inapplicable to prescription drugs: "While the 'ordinary consumer' may have a reasonable expectation that a product such as a machine he purchases will operate safely when used as intended," in the context of a drug, the duty is upon the physician to provide warnings to the patient. *Id.* at 1061-1062. The manufacturer cannot be held liable if the doctor has failed in his duty to transmit these warnings. *Id.* at 1062. Likewise, in the present context, the plaintiff is not the consumer; the government is the consumer. The government has a duty to provide any necessary warnings or instructions to its employees in carrying out their duties in the correct performance of their job. Plaintiff cannot have an injury based on the Consumer Expectation Test when she is not the consumer and did not use the product. Moreover, the Consumer Expectations Test is applied in the context of an actual, physical harm to the consumer, not the type of legal "injury" that Michel alleges. *See e.g., Escola v. Coca Cola Bottling Co.,* 24

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

15

Cal.2d 453 (1944); *Midgley v. S.S. Kresge Co.*, 55 Cal.App.3d 67 (1976); *Bresnahan v. Chrysler Corp.*, 32 Cal.App.4th 1559 (1995); *Arnold v. Dow Chemical Co.*, 91 Cal.App.4th 698 (2001); *West v. Johnson & Johnson Products, Inc.*, 174 Cal.App.3d 831 (1985); *Rosburg v. Minnesota Mining & Mfg. Co.*, 181 Cal.App.3d 726 (1986); *Bell v. Bayerische Motoren Werke Aktiengesellschaft*, 181 Cal.App.4th 1108 (2010).

In any regard, the Narco Pouch Test 923 performed as the "ordinary consumer" expected. It is a presumptive test for methamphetamine. It provided a correct positive result as the seized substances had properties indicative of methamphetamine. Confirmatory testing is required because as is commonly known, the field test is only presumptive. The confirmatory testing showed that it was not methamphetamine, which is the reason that confirmatory testing is required in the first place. The test, the process, the procedures all worked as intended.

**E.     Safariland Does Not Have A Duty To Warn**

      1.    <u>Safariland Does Not Have A Duty To Warn That Its Product Works Correctly, Accurately, And As Intended</u>

A claim as to failure to warn inherently rests upon the notion that there is some sort of defect that exists within the manufacturer's product that cannot be designed around. *Khan,* 217 Cal.App.3d at 855; *Artiglio,* 61 Cal.App.4th at 835; *Johnson,* 43 Cal.4th at 64-65; Rest.2d Torts, §402A, com. j, p. 353. There is no such defect present here. *See supra,* Section IIIC. Safariland manufacturers a portable version of the Sodium Nitroprusside or Simon's Reagent test that forensic chemists conduct in the laboratory. Deposition of Allen Miller ("Miller Depo.") at 20:2-11, 21:6-11(Ex. F to Smelser Decl.); Miller Decl. at ¶ 5, Ex. A; Malone Depo. at 51:4-18,67:24-69:11; Report of A. Duggan at 5, 8-15; *see also, supra,* Section IIC. The undisputed evidence shows that the product worked just as the Sodium Nitroprusside or Simon's Reagent did in the laboratory. *See supra,* Section IIC, IIIC. Safariland does not have a duty to warn officers that its product worked as intended. *See Khan,* 217 Cal.App.3d at 855; *Artiglio,* 61 Cal.App.4th at 835;

3:16-cv-00277-GPC-AGS

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

*Johnson,* 43 Cal.4th at 64-65; Rest.2d Torts, §402A, com. j, p. 353. Simply put, there is nothing here for Safariland to warn against.

Further, the law does not recognize a duty for manufacturers to provide legal education to its users, or to provide any instruction, for that matter, regarding possible decisions users may make after correctly using a product. Safariland merely sells a convenient means by which law enforcement may take the same test they were already and still do already perform in the lab, out in the field. Clark Depo. at 57:17-22; Miller Decl. at ¶ 4; Malone Depo. at 54:4-18, 53:16-24, 67:24-69:11; Report of A. Duggan at 5, 8-11; Okorocha Depo. at 89:7-20, 101:2-13. As a manufacturer, Safariland's duties do not include instruction on the proper legal decisions an officer of the law may make. Indeed, DEA forensic chemist Alexandra Ambriz and DEA laboratory director James Malone testified that Safariland does not have the authority to advise how the tests should be used in the performance of their job, and regardless of what information Safariland stated on its packaging and instructional material, the agents and officers would follow police and agency procedures and guidelines made pursuant to the law. Ambriz Depo. at 153:3-154:1; Malone Depo. at 53:16-54:25. Dr. Malone further explained that the DEA provides its own training to its agents and CBP Officers on how to use a presumptive drug test and what the results mean. Malone Depo. at 52:10-53:15, 64:13-65:1.

Simply put, Safariland does not have the authority to mandate the law or the practices of police agencies.[3] *See e.g.,* Ambriz Depo. at 153:3-154:1; Malone Depo.

_____

[3] Indeed, Safariland sells its products to multiple law enforcement agencies and military in the United States and abroad, who may each abide by different laws and regulations. The sufficiency for probable cause may be different. Requiring a chemical manufacturer to provide legal education to different users all over the world operating under different legal standards is completely outside of the purview of a duty to warn. *Johnson,* 43 Cal.4th at 40 ("Requiring manufacturers to warn their products' users in all instances would place an onerous burden on them and would 'invite mass consumer disregard and ultimate contempt for the warning process.'").

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

at 54:13-25. If the law says or if the federal government tells its officers that a positive test result on a Sodium Nitroprusside or Simon's Reagent test is sufficient for probable cause to arrest, then nothing Safariland says or does not say will change an officer's actions. *Id*. Safariland does not have the authority to tell an officer how to do his job just as a manufacturer of a mammogram machine does not have the authority to instruct a doctor on the proper course of treatments for cancer.

> 2. Safariland Does Not Have A Duty To Warn Sophisticated Users

CBP is a sophisticated user and sophisticated users need not be warned about dangers of which they are already aware or should be aware. *Johnson v. American Standard, Inc.*, 43 Cal.4th 56, 65 (2008); *Chavez v. Glock, Inc.*, 207 Cal.App.4th 1283, 1301 (Cal.App.2d Dist. 2012); *Fierro v. International Harvestor Co.*, 127 Cal.App.3d 862, 866 (Cal.App 2d Dist. 1982).

The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about a products' potential hazards. *Johnson v. American Standard, Inc.*, 43 Cal.4th at 65 (citing *In re Related Asbestos Cases*, 543 F. Supp. 1142, 1151 (N.D.Cal. 1982) (held that the Navy is a sophisticated user of asbestos products which absolved a manufacturer of warning users of the dangers of asbestos)). The defense is considered an exception to the manufacturer's general duty to warn consumers, and <u>negates</u> the manufacturer's duty to warn. *Id*. The sophisticated user defense applies to strict liability and negligent failure to warn cases. *Id*. at 65.

Under the sophisticated user defense, sophisticated users need not be warned about dangers of which they are already aware or should be aware. 43 Cal. 4th at 65; *Webb v. Special Electric Co., Inc.*, 63 Cal. 4th 167, 182-183 (2016). Because these sophisticated users are charged with knowing the particular product's dangers, the failure to warn about those dangers is not the legal cause of any harm that product may cause. *Chavez*, 207 Cal.App.4th at 1313 (*quoting Johnson v. American Standard*, 43 Cal.4th at 65); *see also Johnson v. Honeywell Internat. Inc.*, 179

18

3:16-cv-00277-GPC-AGS

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Cal.App.4th 549, 559 (Cal.App.2d Dist. 2009). The rationale supporting the defense is that "the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers." *Id.* This is because the user's knowledge of the dangers is the equivalent of prior notice. *Id.* (*citing Billiar v. Minnesota Mining and Mfg. Co.*, 623 F.2d 240, 243 (2nd Cir.1980) ("[N]o one needs notice of that which he already knows")).

The duty to warn is measured by what is generally known or should have been known to the class of sophisticated users, rather than by the individual plaintiff's subjective knowledge. *Id.* at 65. A manufacturer is only required to inform a user of a potential risk if it has no reason to believe that the user will have the special experience to enable him/her to perceive the danger. *Id.* at 66. In other words, "if the manufacturer reasonably believes the user will know or should know about a given product's risk, the manufacturer need not warn that user of the risk." *Id.* (internal citations omitted). As the California Supreme Court explained in *Johnson v. American Standard, Inc.*, "[j]ust as a manufacturer need not warn ordinary consumers about generally known dangers, a manufacturer need not warn members of a trade or profession (sophisticated users) about dangers generally known to that trade or profession." *Id.* at 67.

Further, the sophisticated user defense does not require a user's actual awareness of potential hazards. *Webb*, 63 Cal. 4th at 183. The "individuals who represent that they are trained or are members of a sophisticated group of users are saying to the world that they possess the level of knowledge and skill associated with that class." *Johnson*, 43 Cal. 4th at 71. Manufacturers and suppliers are justified in relying on that representation. *Id.* The fact that a sophisticated user does "not actually possess that knowledge and skill" does "not give rise to liability on the part of the manufacturer." *Id.*

Plaintiff spends almost two pages discussing what Officers Gibbons and

19

Garza[4] actually knew and remembered from their training, conveniently omitting portions of their testimony where they testified they knew the test was presumptive and required confirmation by a laboratory. Gibbons Depo. at 11:22-12:1, 12:5-7, 40:8-16; Garza Depo. at 49:1-11. However, regardless, the Officers actual knowledge or alleged lack thereof is irrelevant information as a matter of law. *Johnson*, 43 Cal. 4th at 71. Certainly, "[i]t would be nearly impossible for a manufacturer to predict or determine whether a given user or member of the sophisticated group actually has knowledge of the dangers because of the infinite number of user idiosyncrasies." *Id.* Whether a given user "may have misread their training manuals, failed to study the information in those manuals, or simply forgotten what they were taught" is simply not the responsibility of the manufacturer. *Id.* at 71, 73-74.

It is also significant if the intermediary itself had a legal duty to warn end users about the particular hazard in question. *Webb,* 63 Cal. 4th at 191; *Persons v. Salomon North America, Inc.,* 217 Cal.App.3d 168, 178 (Cal. App. 3d Dist. Jan. 18, 1990). Generally, "every person has a right to presume that every other person will perform his duty and obey the law." *Webb,* 63 Cal. 4th at 191 (internal citations omitted); *see also Persons*, 217 Cal.App.3d at 178 (*quoting* Rest.2d Torts, § 388, com. n, 308).

Defendant United States of America, comprised of the DEA, Department of Homeland Security, and Customs and Border Patrol, is a sophisticated user of presumptive drug tests and of determining probable cause to arrest an individual for transporting controlled substances over the United States border. *See supra* Section IID; *see Chavez,* 207 Cal.App.4th at 1313. In fact, the California Appellate Court

---

[4] Officer Garza's knowledge is further irrelevant because he did not arrest Michel and he did not conduct the testing of the three additional bottles of suspected methamphetamine found in Michel's vehicle. Garza Depo. at 46:9-47:14, 49:12-21, 51:17-24; Gibbons Depo. at 13:20-14:1.

has already determined that police officers are sophisticated users by way of the extensive training they receive through the academy and on the job in regard to their weapon and holster. *Chavez,* 207 Cal.App.4th at 1313. Likewise, CBP, HSI, and DEA, charged with the duty of protecting the Nation's borders and who spend a majority of their job searching, detecting, and testing for controlled substances, have had extensive training received through FLETC and on the job. *See supra* Section IID. These Officers and Agents are sophisticated users as a matter of law. *Chavez,* 207 Cal.App.4th at 1314 (ordering summary adjudication in favor of defendants because a Los Angeles Police Officer was deemed a sophisticated user as a matter of law).

Safariland does not need to warn the United States or these government entities on the determination of probable cause, the propriety of relying on a presumptive test, or even what a presumptive test is. *Id.*; *see Johnson,* 43 Cal.4th at 65; *Johnson v. Honeywell Internat. Inc.,* 179 Cal.App.4th at 559. In fact, the government agencies have a legal duty to provide the appropriate education to its officers and agents to ensure they uphold the law and do so within the law. *See supra* Section IID; Clark Depo. at 15:19-23. Safariland had every right to rely upon CBP's duty to educate their officers on determining probable cause for arrest and the appropriateness of relying upon a presumptive drug test to do so. *Johnson,* 43 Cal. 4th at 71; *Webb,* 63 Cal. 4th at 191; *Persons,* 217 Cal.App.3d at 178; *Chavez,* 207 Cal.App.4th at 1313.

> 3. Safariland Does Not Have A Duty To Warn The Employees of Learned Intermediaries

Safariland additionally has an absolute defense in the bulk seller doctrine. *Forest v. Vitek, Inc.,* 884 F.Supp. 378, 379 (D. Nev. 1993) *citing Sara Lee Corp. v. Homasote Co.,* 719 F.Supp. 417 (D. Md. 1989). The bulk seller/supplier doctrine is available to manufacturers who manufacture products that are not defective when they "come off the line" (*Lee v. Electric Motor Division,* 169 Cal.App.3d 375, 383

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

(Cal.App.2d 1985)) and who were objectively reasonable in relying on a knowledgeable intermediary to provide a warning to ultimate users. *Forest, supra,* at 381. Such is the case here: Safariland relies on the training facilities and personnel of its various customers' agencies to train their officers, agents, and other personnel in the proper use and interpretation of the Narco Pouch test kits. Miller Decl. at ¶ 10; *see supra,* Section IID. Indeed, Safariland has no control or authority over any officer of the CBP, agent of HSI, or the United States Attorney's Office to instruct them to arrest plaintiff.

California courts have addressed this issue on multiple occasions. For instance, in *Lee*, the Court of Appeals affirmed the grant of summary judgment against the plaintiffs in their products liability case. 169 Cal.App.3d 375. The Lees alleged that a motor within a meat grinder was defective and caused injury to Mr. Lee's right hand, requiring it to be amputated. *Id.* The Court determined that the defendants were entitled to the bulk supplier defense (or component part manufacturer defense) because the defendant had no part in designing or manufacturing the meat grinder.[5] *Id.* at 383-389. The Court held that defendant could not be held liable for the manufacture of its non-defective product, "if there was no defect in the motor at the time the motor left the defendants plant." *Id.* at 384. The instant case is analogous.

Here, plaintiff alleges that the Narco Pouch 923 was defective, though not because the product itself was defective, in that it came off the line in a way that was different from other Narco Pouch 923 kits. Plaintiff's own police practices expert and toxicologist agree that the test functioned as intended and is an acceptable,

---

[5] The bulk supplier and component part manufacturer defenses are identical. The defenses are often used in the context of raw chemical manufacturers whose chemicals are later made a part of subsequent product, but the cases (like *Lee*) demonstrate that while a product may be a part of another product, the products at issue are often *complete* products in and of themselves. *See Forest, supra*, at 1467, fn. 8.

3:16-cv-00277-GPC-AGS

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788

validated, and appropriate method to presumptively test for methamphetamine. Okorocha Depo. at 84:21-23, 89:17-20, 101:9-13; Clark Depo. at 10:25-11:1, 17:1-17, 27:25-28:17. Instead, the alleged "defectiveness" is in how CBP used the non-defective test. The Court should understand the Narco Pouch to be a "component" of the formation of probable cause, leading to plaintiff's arrest. Safariland is not the designer, manufacturer, or even decision-maker as to the combination of parts which is said to be defective in this case. As a matter of law, there is no duty to warn in such cases. *Zambrana v. Standard Oil Co.*, 26 Cal.App.3d 209, 217-218 (1972).

As in *Lee* and *Zambrana*, the Narco Pouch 923 was not a danger to the plaintiff by itself. In fact, Plaintiff never touched the pouches or had any exposure to the chemicals contained therein. Instead, Plaintiff asserts that she was arrested because the Narco Pouch gave a positive result (because it functioned as intended), and that this constitutes an unwarranted danger (i.e., of false arrest) for which Safariland is liable. But the cases dictate otherwise as Safariland has no control or authority over any officer of the CBP, agent of HSI, or the United States Attorney's Office to instruct them to arrest Plaintiff. Consequently, the Court must find that Safariland is entitled to the bulk supplier defense and grant summary judgment as to all claims.

### F.      Plaintiff Cannot Establish Causation

Safariland did not arrest Michel. Gibbons Depo. at 13:20-22, 21:7-9. Safariland did not tell CBP to arrest Michel. *Id.* Safariland does not have the legal authority to state whether officers should and should not make arrests. *See e.g.,* Ambriz Depo. at 153:3-154:1; Malone Depo. at 54:13-25. Safariland had no control over Ms. Michel's arrest and detainment or the timing of the laboratory testing. *See id.;* Okorocha Depo. at 109:18-20, 107:20-24. Plaintiff's expert Roger Clark opines that the arrest and detainment of Ms. Michel was proper. Clark Depo. at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Plaintiff's expert Okorie Okorocha agrees that it is entirely proper to use a presumptive field test to arrest and detain someone.

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELEPHONE (213) 362-7777
FACSIMILE (213) 362-7788

Okorocha Depo. at 92:3-15. The only claim that Plaintiff's experts have identified is that Safariland failed to include a statement on its packaging and instructions that its presumptive test is not confirmation of the presence of methamphetamine and that all samples must be sent to the lab for testing, claiming that if it had done so, the subject lab testing would have been rushed and Michel's injury would have been prevented. As a matter of law, Plaintiff cannot establish such a claim. Safariland's box and instructional insert already state its test is presumptive and that all samples must be sent to the lab for testing. Miller Decl. at Ex. B, C. Further, Plaintiff's own experts admitted that it is common knowledge that a presumptive test is not conclusive and that confirmatory testing is required. Clark Depo. at 47:15-24, 58:9-14; Okorocha Depo. at 101:23-102:5. All Officers and Agents deposed in this case stated that they knew confirmatory testing was required and both Officer Gibbons who made the arrest and S/A Bulman who managed Michel's criminal prosecution, stated they knew the field test was not conclusive. Gibbons Depo. at 11:22-12:1, 12:5-7, 40:8-16; Garza Depo. at 49:1-11; Bulman Depo. at 54:24-55:7. Moreover, Plaintiff's own expert agrees that Safariland has no control over when laboratories perform their analysis or testing. Okorocha Depo. at 109:18-20, 107:20-24. Simply put, Plaintiff cannot establish that her proposed warning, which is repetitive of statements on Safariland's box and instructional insert, would have prevented her alleged injury.

Furthermore, Plaintiff herself commented in her interview with S/A Bulman that the suspected substance would have to undergo confirmatory testing in a lab before she could be convicted of a crime. Bulman Depo. at 54:24-55:7; Inv. Reports at Bates USA_0037. Plaintiff, an unsophisticated individual, understood the field drug test was not confirmation of a controlled substance and knew a lab would have to confirm the results. *Id.* S/A Bulman confirmed this and agreed. *Id.* It is axiomatic to claim that Safariland should have to warn sophisticated users, who receive extensive training, regarding something that is common knowledge to be

24

3:16-cv-00277-GPC-AGS

presumptive only and that a civilian with no training clearly was aware of and understood.

Moreover, the CBP officer who conducted the field tests and arrested Michel stated that he did not read the instructions or packaging of the field tests. Gibbons Depo. at 14:9-18, 18:14-20, 27:2-8. S/A Bulman, who managed Ms. Michel's case, did not conduct the field tests, did not read the instructions or packaging, and did not arrest Ms. Michel. Bulman Depo. at 40:8-20, 43:23-44:5, 58:1-22, 61:12-62:8. Any information contained on Safariland's instructions and packaging was not received by S/A Bulman. It was S/A Bulman who contacted the DEA to request an analyst obtain samples from the seized material, submit such samples to the laboratory and conduct the testing. *Id.* at 61:12-62:8; Garza depo at 46:24-47:7,49:12-21. It was S/A Bulman who had the ability to request a rush on such testing, not the CBP officers. Bulman Depo. at 68:7-18, 77:13-78:4, 86:6-18; Garza depo at 46:24-47:7,49:12-21. Plaintiff cannot establish that anything Safariland stated on its product packaging or instructions that S/A Bulman never saw would have caused S/A Bulman to rush the laboratory results and prevented Michel's alleged injury.

## IV.    Conclusion

For the foregoing reasons, Safariland respectfully requests the Court deny Plaintiff's Motion for Partial Summary Judgment and dismiss her claims against Safariland. Safariland additionally requests recovery of its attorneys' fees and costs incurred in this action to the fullest extent allowed by law.

DATED: August 11, 2017          YUKEVICH | CAVANAUGH

By: _____ /s/ Steven D. Smelser _____
Steven D. Smelser
Attorneys for Defendant SAFARILAND, LLC

YUKEVICH | CAVANAUGH
355 S. GRAND AVENUE, 15TH FLOOR
LOS ANGELES, CALIFORNIA 90071-1560
TELPHONE (213) 362-7777
FACSIMILE (213) 362-7788