STEVEN D. SMELSER (SBN 180602)
 *ssmelser@yukelaw.com*
BOBBIE N. EFTEKAR (SBN 240102)
 *beftekar@yukelaw.com*
LUCAS E. ROWE (SBN 298697)
 *lrowe@yukelaw.com*
YUKEVICH | CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone:     (213) 362-7777
Facsimile:     (213) 362-7788

Attorneys for Defendant
SAFARILAND, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOYMA VANESSA MICHEL, an individual, | CASE NO. 16-CV-0277-GPC-AGS [Hon. Gonzalo P. Curiel] |
| Plaintiff, | **SAFARILAND'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT SAFARILAND, LLC** |
| v. | |
| UNITED STATES OF AMERICA, SAFARILAND, LLC, a Delaware limited liability company, and DOES 1 – 100, inclusive, | Date: September 8, 2017 Time: 1:30 PM Courtroom: 2D |
| Defendants. | |

**TO THE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:**

/ / /

1716326.1 / 128-004

Defendant Safariland, LLC hereby submits the attached Response to Plaintiff's Motion for Partial Summary Judgment against Safariland, LLC.

DATED:  August 11, 2017

Respectfully submitted,
YUKEVICH | CAVANAUGH


By:        /s/ Steven D. Smelser
Steven D. Smelser
Bobbie N. Eftekar
Lucas E. Rowe
Attorneys for Defendant SAFARILAND, LLC

1716326.1 / 128-004

- 2
16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 1. On June 2, 2014, Customs and Border Protection (CBP) Officer Eduardo Garza was conducting a pre-primary roving inspection at the San Ysidro Port of Entry when he encountered Plaintiff Doyma Michel.<br><br>Dep. Tr. Eduardo Garza (hereinafter "Garza Dep.") at 14:20 – 15:8; Report of Officer Garza, attached hereto as Exhibit 2. | Objection as to the Report of Officer Garza as calling for hearsay (Fed. R. Evid. 802) and lacking foundation and authenticity (Fed. R. Evid. 901) as no report is attached.<br><br>Otherwise, Undisputed. |
| 2. Officer Garza approached a black 2001 Audi A4 driven by Plaintiff Doyma Michel for inspection.<br><br>Garza Dep. 16:5 – 9, Exh. 2. | Undisputed. |
| 3. Doyma handed Officer Garza a valid U.S. passport and informed Garza that she was on her way to a smog check.<br><br>Garza Dep. 17:8 – 17, Exh. 2. | Undisputed. |
| 4. While Garza spoke to Doyma on the driver-side of her vehicle, another CBP officer stood in front of the vehicle on the passenger side and a third CBP | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| officer searched the inside of the car on the passenger side by the dashboard.<br><br>Garza Dep. 19:7 – 18, Exh. 2. | |
| 5.  The officers found a bottle of brown colored liquid, the "cuajo", inside a black sock in the glove box in front of the firewall of Doyma's car.<br><br>Garza Dep. 22:4 - 20, Exh. 2. | Objection as to the use of the term, "the 'cuajo,'" which calls for speculation, is argumentative, lacks foundational facts, and misstates the testimony as Ofc. Garza did not testify as to the substance found and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br><br>Otherwise, <u>Undisputed</u> that Doyma attempted to smuggle a bottle of brown liquid in a black sock behind the glove box but in front of the firewall. |
| 6.  Cuajo is a type of enzyme used to make cheese.<br><br>Garza Dep. 23:9 – 16, Exh. 2. | Objection. Lacks foundational facts establishing personal knowledge and basis for personal knowledge insofar as Ofc. Garza stated that internet research indicated cuajo was an enzyme used to make cheese.<br><br>Otherwise, <u>Undisputed</u>. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 7. During the initial pre-primary encounter, Garza did not scan Doyma's plates, or run her license or passport number. Garza Dep. 44:14-18, Exh. 2. | Undisputed. |
| 8. Officer Garza escorted Doyma and her car to the secondary area. Doyma informed Garza the liquid in the bottle was used to make cheese. Garza Dep. 27:2 – 10, Exh. 2; Garza Report, attached hereto as Exhibit 10. | Objection as to the Report of Officer Garza as calling for hearsay (Fed. R. Evid. 802) and lacking authentication (Fed. R. Evid. 901). The Declaration of Ms. Jun fails to properly authenticate the Report of Officer Garza. Objection to the extent mischaracterizes the facts and testimony. Officer Garza then asked Doyma why she hid the bottle if it was only to make cheese to which Doyma had no response. (*See* same evidence cited). Otherwise, Undisputed. |
| 9. At secondary, Garza conducted a test of the bottle of brown liquid using a field drug test kit. Garza Dep. 27:24 – 28:5, Exh. 2. | Undisputed. |
| 10. Garza used the Narco Pouch 923 | Objection. Misstates the testimony of |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| to test the contents of the cuajo bottle.<br><br>Garza Dep. 30: 18 – 31:1, Exh. 2. | Ofc. Garza, who stated that the test he used "look[ed] similar" to the box he was shown by plaintiff's counsel. Objection as to the use of the term, "cuajo," which calls for speculation, lacks foundation, is argumentative and misstates the testimony as Ofc. Garza did not testify that the bottle was cuajo and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br><br>Otherwise, <u>Undisputed</u>. |
| 11. Garza took a piece of paper, dipped it into the brown cuajo liquid, then placed it in a pouch that comes with the Narco Pouch 923 test kit. Garza then broke 3 different vials of chemicals and placed them in the same pouch. A blue color reaction resulted.<br><br>Garza Dep. 31:9 – 20, Exh. 2. | Objection as to the use of the term, "cuajo," which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Garza did not testify as to the substance found and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br><br>Objection. Misstates the testimony of Ofc. Garza as to the process of breaking the vials, which were always inside the test pouch.<br><br>Otherwise, <u>Undisputed</u>. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 12. When Garza saw the color change, he believed the substance in the cuajo bottle was methamphetamine.<br><br>Garza Dep. 34:22 – 35:1, Exh. 2. | Objection. Objection as to the use of the term, "cuajo," which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Garza did not testify as to the substance found and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br>Objection as Garza's belief is immaterial and irrelevant because (1) he did not arrest or have any other involvement in Michel's case other than referring to the seizing officer (Garza Depo. at 46:9-47:14, 49:12-21, 51:17-24, Ex. B to Smelser Decl. in support of Safariland's Opposition to Plaintiff's Mtn. for Partial Summary Judgment Against Safariland ("Smelser Decl.")) and (2) the applicability of the sophisticated user defense and bulk seller doctrine. *See* Safariland's Opposition to Plaintiff's Motion for Partial Summary Judgment Against Safariland ("Opp") at 18-23.<br>Disputes over matters that do not affect |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u> that Garza testified to this. |
| 13. Garza had been taught that if there was a positive reaction from the field test kit, the substance was methamphetamine.<br>Garza Dep. 35: 6 - 8, Exh. 2. | Objection. Misstates mischaracterizes the testimony of Ofc. Garza as to the conclusiveness of the field tests. *See* Garza Dep. 49:1-11, Ex. B to Smelser Decl.<br><br><u>Disputed</u>. |
| 14. After concluding the cuajo bottle contained methamphetamine, Garza placed Doyma in handcuffs and escorted her to the security office.<br>Garza Dep. 35:9 – 13, Exh. 2. | Objection as to the use of the term, "cuajo," which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Garza did not testify as to the substance found and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br><br>Otherwise, <u>Undisputed</u>. |
| 15. Garza placed Doyma in | Objection on the grounds that it is an |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| handcuffs and took her to the security office because of the positive result from the Narco Pouch 923. Garza Dep. 47:8 – 21, Exh. 2. | incomplete representation of the facts leading to the use of the Narco Pouch 923 field test and as such mischaracterizes the facts. *See* Inv. Reports, Ex. A to Smelser Decl. Otherwise, Undisputed that Garza testified to this. |
| 16. CBP Officer Brandon Gibbons conducted a search of Doyma's car. He discovered five bottles of alcohol and three additional bottles of cuajo. Dep. Tr. Brandon Gibbons (hereinafter "Gibbons Dep.") at 12:16 – 13:7, attached hereto as Exhibit 3. | Objection as to the use of the term cuajo, which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Gibbons did not testify that the bottles were cuajo and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine. Otherwise, Undisputed. |
| 17. Officer Gibbons used the Narco Pouch 923 to test the four bottles of the cuajo. Gibbons Dep. 13:23 – 14:8, Exh. 3. | Objection as to the use of the term cuajo, which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Gibbons did not testify that the bottles were cuajo and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine. |

1716326.1 / 128-004

- 9

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Otherwise, <u>Undisputed</u>. |
| 18. A dark blue color reaction resulted from the use of the test kits. Officer Gibbons observed a positive result for each of the four bottles.<br>Gibbons Dep. 18:11 – 12; 20:25 – 21:6, Exh. 3. | <u>Undisputed</u>. |
| 19. Gibbons took photos of the four bottles of cuajo with the Narco Pouch 923 test kit results showing a dark blue color.<br>Gibbons Dep. 24:14 – 24; 41:5 – 15, Exh. 3, photos taken by Gibbons (USA 0238 and 0239), attached hereto as Exhibit 12. | Objection as to the use of the term cuajo, which calls for speculation, is argumentative, lacks foundation, and misstates the testimony as Ofc. Gibbons did not testify that the bottles were cuajo and there is no evidence that cuajo was contained in the bottles of suspected methamphetamine.<br><br>Otherwise, <u>Undisputed</u>. |
| 20. Gibbons placed Doyma under arrest due to the positive test result from the Narco Pouch 923.<br>Gibbons Dep. 21:21 – 23; 35:17 - 20, Exh. 3. | Objection on the grounds that it is an incomplete representation of the facts leading to the use of the Narco Pouch 923 field test and as such mischaracterizes the facts. *See* Inv. Reports, Ex. A to Smelser Decl. Gibbons also said that if the test had |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | been negative, plaintiff may still have been arrested. *See* Gibbons Dep. 35:21-36:4 , Ex. C to Smelser Decl. Objection as immaterial and irrelevant because Plaintiff's police practices expert and forensic toxicologist expert testified that Michel's arrest was proper.  Clark Depo. at 17:1-17, Ex. J to Smelser Decl.; Okorocha Dep. at 92:3-15, Ex. N to Smelser Decl.<br><br>Otherwise, <u>Undisputed</u> that Gibbons testified to the proffered statement. |
| 21. Gibbons then contacted ICE to have an agent conduct an interrogation and follow up on the investigation, which is the general practice at the port of entry.<br>Gibbons Dep. 22:6 – 18, Exh. 3. | <u>Undisputed</u>. |
| 22. Gibbons did not recall being taught that, in additional controlled substances, other legal substances could produce the same color result in a field test.<br>Gibbons Dep. 33:25 – 34:5, Exh. 3. | Objection. Argumentative and Misstates/mischaracterizes the testimony of Ofc. Gibbons as he also testified that the tests were not conclusive and further testing in a laboratory was required to confirm the |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | substance was methamphetamine. Gibbons Dep. at 11:22-12:7, 40:8-16 (Smelser Decl. at Ex. C)<br><br>Otherwise, Undisputed as to Gibbons testified recollection. |
| 23. Gibbons did not recall being taught, with respect to the Narco Pouch 923, that any substance that is a secondary amine would produce the same color result as methamphetamine.<br>Gibbons Dep. 33: 25 – 34:11, Exh. 3. | Objection. Argumentative and Misstates/mischaracterizes testimony of Ofc. Gibbons as he also testified that the tests were not conclusive and further testing in a laboratory was required to confirm the substance was methamphetamine.  Gibbons Dep. at 11:22-12:7, 40:8-16 (Smelser Decl. at Ex. C)<br><br>Otherwise, Undisputed. |
| 24. In 2012, at the Federal Law Enforcement Training Center (FLETC) as part of his academy training, Officer Gibbons received training on field tests, including how to properly use the kits and how to use the kits to test for different narcotics.<br>Gibbons Dep. 9:5 – 10; 10:23 – 11:6, | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Exh. 3. | |
| 25. Gibbons was taught at FLETC that field tests are presumptive only and that further testing is required to confirm a substance is methamphetamine.<br>Gibbons Dep. 40:8 - 18, Exh. 3. | Undisputed. |
| 26. Gibbons did not receive any additional training regarding field drug test kits from the time he left the academy in 2012 to the time he did the test in this case in June 2014.  Gibbons did not attend any additional seminar or training program after leaving the academy and beginning work.<br>Gibbons Dep. 42:11 – 19, Exh. 3. | Objection as argumentative in that less than two years passed from the time Gibbons graduated the academy and the incident.<br>Otherwise, Undisputed. |
| 27. Gibbons recalled an e-mail being sent out regarding liquid methamphetamine, but could not recall exactly what it said.<br>Gibbons Dep. 42:16 – 43:1, Exh. 3. | Undisputed. |
| 28. Garza was trained at FLETC on the use of field tests for the testing of controlled substances | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Garza Dep. 7:5 – 8:11, Exh. 3. | |
| 29. Garza was taught that if a field test result was positive, the subject being tested was a controlled substance.<br><br>Garza Dep. 9:14 – 18, Exh. 3. | Objection. Misstates the testimony of Ofc. Garza as to the conclusiveness of the field tests. *See* Garza Dep. 49:1-11, Ex. B to Smelser Decl.<br><br>Disputed in part in that Garza later explained further. *Id.* |
| 30. In his 10 years working at the San Ysidro Port of Entry, CBP Officer Garza did not receive any additional formal class or seminar training regarding the use of field tests.<br><br>Garza Dep. 10: 17 – 11:5, Exh. 3. | Objection. Misstates testimony and argumentative as to "formal class." *See* plaintiff's SUF #31.  Garza testified he received additional training and briefings 2-3 times a week.  Garza Dep. at 10:17-12:7 (Ex. B to Smelser Decl.) |
| 31. Garza did attend at least one briefing by a shift supervisor regarding the use of field test kits to tested suspected liquid methamphetamine.  At the shift briefing, CBP officers were told, when they encounter suspected liquid methamphetamine, to use a piece of paper, dip it in the substance, and then place the paper inside a field test kit.  CBP | Undisputed. |

1716326.1 / 128-004

- 14

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| officers were also instructed to be extremely careful as liquid methamphetamine is a hazardous material and the officers should not make contact with it or get any on their skin. Garza Dep. 12:8 – 24, Exh. 3. | |
| 32. Garza received one e-mail regarding liquid methamphetamine, but he could not recall anything about the e-mail. Garza Dep. 13:23 – 14:7, Exh. 3. | Objection. Misstates testimony that received at least one email. Garza Dep. 11:16-12:11. Otherwise, Undisputed. |
| 33. Approximately one and a half years after Doyma's arrest, CBP Officer Garza spoke to some chemists during a briefing on hazardous materials at the port of entry. The chemists could not explain how or why Garza had experienced a "false-positive" result in Doyma's case. Garza Dep. 36:8 – 37:18, Exh. 3. | Objection. Lacks foundational facts, calls for speculation, and hearsay as to the statements made by unidentified third-parties. Objection as immaterial and irrelevant and mischaracterizes testimony. Officer Garza could not recall the specifics of the conversation, did not appear to provide specific information to the third parties, and stated that all he asked was "could there be a false positive to a liquid substance.." (37:16-17), which any chemist would say no |

1716326.1 / 128-004

- 15

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | in response to such a question. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). |
| 34. As of June 2, 2014, the date of Doyma's arrest, Garza had never been trained, taught, or informed that the Narco Pouch 923 could result in a "false positive" for methamphetamine.<br><br>Garza Dep. 37: 19 – 38:15, Exh. 3. | Objection. Argumentative and unintelligible as to the phrase false positive for methamphetamine. The test does not test for methamphetamine and as such cannot have a false positive for methamphetamine. *See e.g,* Report of R. Clark, fn. 4, Ex. K to Smelser Decl. Notably, Roger Clark is Plaintiff's own proffered expert in police practices. *See id.* Lack of foundation as to the understanding of "false positive." Misstates testimony of Ofc. Gibbons as he also testified that the tests were not conclusive and further testing in a laboratory was required to confirm the substance was methamphetamine. Gibbons Dep. at 11:22-12:7, 40:8-16 (Smelser Decl. at Ex. C). |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Objection as immaterial and irrelevant as a matter of law due to the application of the sophisticated user defense. *See* Opp at 19-20. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). |
| 35. Garza did not recall reading anything regarding "false positive" on the packaging material or testing instructions for the Narco Pouch 923. Garza Dep. 38:11 – 15, Exh. 3. | Objection. Irrelevant and argumentative as Safariland would not discuss "false positives" when it is a misnomer and technically impossible as used. *See e.g,* Report of R. Clark, fn. 4, Ex. K to Smelser Decl. Misstates testimony of Ofc. Gibbons as he also testified that the tests were not conclusive and further testing in a laboratory was required to confirm the substance was methamphetamine. Gibbons Dep. at 11:22-12:7, 40:8-16 (Smelser Decl. at Ex. C)  Otherwise, <u>Undisputed</u> . |
| 36. When Garza placed handcuffs | Objection. Irrelevant and |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| on Doyma on June 2, 2014, he did so because he had been trained, taught, and instructed that when a color change occurred on the field test kit, it was because the substance being tested was methamphetamine. Garza Dep. 38:16 – 22, Exh. 3. | argumentative.  Objection as immaterial and irrelevant as a matter of law due to the application of the sophisticated user defense. *See* Opp at 19-20. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Disputed for the truth of the matter asserted in that DEA Lab Director James Malone stated he, himself, has provided training to Customs and Border Patrol Officers and explained the test is not confirmatory, is presumptive, and many legal substances may produce a positive result.  Malone Dep. at 52:10-53:15, 64:13-65:1, Ex. G to Smelser Decl. Otherwise, Undisputed that Garza made the statement. |
| 37. The CBP policy on the use of narcotic field test kits states, "All | Objection. Lacks foundational facts for authentication (Fed. R. Evid. 901). |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| CBP personnel are to ensure that the kits are used and disposed of properly and safely in accordance with the manufacturer's instructions. Improper use can lead to incorrect results or injury." CPB Directive re: Use of Narcotic Field Test Kits, USA 0489, attached hereto as Exhibit 19. | Otherwise, Undisputed. |
| 38. The United States does not have records showing Garza, Gibbons, Bulman, or Ambriz ever received training specific to the Narco Pouch 923. USA response to Plaintiff's Special Interrogatories, No. 14, attached hereto as Exhibit 14. | Objection. Irrelevant, argumentative, speculative, and lacks foundation and authentication. The lack of records does not prove or disprove any fact. Nor is it a material fact that would affect the right to judgment under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Further, there is no verification for the interrogatory response or anything else that would provide the authenticity required for admissibility. Otherwise, Undisputed that the United States provided an unverified interrogatory response stating it could |

1716326.1 / 128-004

- 19

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
| --- | --- |
| | not locate documents that specified training as to the Narco Pouch 923 test, or any other specific brand of field test. |
| 39. After Gibbons placed Doyma under arrest, ICE Special Agent Zach Bulman was called to interview Doyma and continue the investigation of the case. Dep. Tr. of Agent Zach Bulman (hereinafter "Bulman Dep.") 40:8 – 20, attached hereto as Exhibit 4. | Undisputed. |
| 40. Bulman interviewed Doyma at the Port of Entry and was informed there four bottles of liquid methamphetamine found in Doyma's car. Bulman Dep. 44: 6 – 10; 45: 7 – 14, Exh. 4. | Undisputed. |
| 41. Doyma explained to Bulman that the plastic bottle found hidden in the dashboard of her car contained cuajo, a substance used to manufacture cheese. Doyma further explained she had planned to take the cuajo to a person in San Bernardino. | Undisputed. |

1716326.1 / 128-004

- 20 -

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Bulman Dep. 47:14 – 48:1, Exh. 4. | |
| 42. Doyma continued to insist that she had not smuggled methamphetamine and that the contents of the bottles were cuajo.<br>Bulman Dep. 54: 17 – 19, Exh. 4. | Undisputed. |
| 43. Bulman told Doyma that she was lying to him, and said he did not believe her.<br>Bulman Dep. 69:2 – 7, Exh. 4. | Undisputed. |
| 44. Bulman called Doyma a liar on the basis of the positive results from the field tests performed by the CBP officers.<br>Bulman Dep. 69:8 - 15, Exh. 4. | Objection. Argumentative, speculative, Mischaracterizes evidence. *See* Inv. Reports, Ex. A to Smelser Decl. Bulman discovered many inconsistent statements from Michel throughout his interview with her as well as a criminal record of prior smuggling attempts, all of which likely led to his belief that Michel was a liar. *See id.* Mischaracterizes testimony in that Bulman did not agree that it was the sole basis of calling Michel a liar. *See* plaintiff's cited testimony. Objection as immaterial and irrelevant. Disputes over matters that do not affect |

1716326.1 / 128-004

- 21

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Otherwise, <u>Undisputed</u> that Bulman agreed that it was a basis. |
| 45. Doyma said to Bulman, "Well, the bottles of Cuajo still need to be examined by a laboratory." Bulman agreed with her as that would be the case. Bulman Dep. 55: 3 -5, Exh. 4. | Objection. Hearsay insofar as statement in quotations was made by plaintiff's counsel, not plaintiff. Otherwise, <u>Undisputed</u>. |
| 46. The positive test results from the Narco Pouch 923 were a major factor in Bulman's decision to arrest Doyma.  Had the test results been negative, Bulman would not have been called to the port of entry. Bulman Dep. 69: 19 – 70:6, Exh. 4. | Objection. Misstates the evidence insofar as Ofc. Gibbons placed under arrest. *See* plaintiff's SUF #20. Misstates the testimony of Ofc Bulman as he stated "Not solely on that basis, no sir." Bulman Dep. at 69:16-18. Calls for speculation, incomplete hypothetical as to what would have occurred had the results been negative. Objection as immaterial and irrelevant as a matter of law due to the application of the sophisticated user defense. *See* Opp at 19-20. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Disputed as to the first sentence, which is in contradiction to Bulman Dep. at 69:16-18. Undisputed that Bulman testified as to the second sentence. |
| 47. On June 3, 2014, the United States charged Doyma with one count of knowingly and intentionally importing approximately 4.45 kilograms of methamphetamine, a schedule II controlled substance into the United States in violation of 21 USC §§ 952 and 960. *United States v. Doyma Vanessa Michel*, case no. 14-CR-1864-DMS, doc. 1, attached hereto as Exhibit 1. | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902. Otherwise, Undisputed. |
| 48. The criminal complaint incorporated by reference the probable cause statement of Bulman, which he swore before | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902. |

1716326.1 / 128-004

- 23

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| a magistrate judge on June 3, 2014.<br><br>*Id.* | Otherwise, <u>Undisputed</u>. |
| 49. The probable cause statement stated as follows in relevant part:<br><br>During an inspection of [Doyma Michel's] vehicle, the CBPO noticed a bottle within a sock concealed within the dashboard above the glove compartment. A subsequent field test of the liquid within the bottle resulted in a positive reaction for the properties of methamphetamine<br><br>At approximately 4:20p.m., a CBPO was assigned to conduct a detailed inspection of MICHEL's Audi. **A total of four (4) bottles weighing approximately 4.45 kilograms were found within the vehicle. Field tests were conducted on the contents of all four bottles resulting in four positive reactions for the properties of methamphetamine.** MICHEL was arrested for violation of Title 21 USC 952, 960, Importation of a Controlled Substance.<br><br>Complaint at p. 2, Exh. 1 (emphasis added). | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902.<br><br>Otherwise, <u>Undisputed</u>. |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 50. Doyma initially appeared before Magistrate Judge Jill Burkhardt on June 3, 2014.  This is the same day that the Magistrate signed the Complaint.<br>Case no. 14-CR-1864 at doc. 3, Exh. 1. | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902.  Lacks foundational facts. Objection as immaterial and irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u>. |
| 51.  On December 4, 2014, Assistant U.S. Attorney Matthew Sutton moved to dismiss the information as to Doyma Michel.<br>*Id.* at doc. 28. , Exh. 1. | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902.  Lacks foundational facts. Objection as immaterial and irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u>. |
| 52. On December 8, 2014, the Court granted the United States' | Objection. Failure to properly authenticate under Fed. R. Evid. 901, |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| motion to dismiss the information as to Doyma.<br><br>*Id.* at doc. 29, Exh. 1. | 902. Lacks foundational facts. Objection as immaterial and irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u>. |
| 53. On December 9, 2014, Doyma was released from jail.<br><br>*Id.* at doc. 31, Exh. 1. | Objection. Failure to properly authenticate under Fed. R. Evid. 901, 902. Lacks foundational facts. Objection as immaterial and irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u>. |
| 54. During the interview with Bulman, Doyma consented to the search of her rented storage unit in Chula Vista. | <u>Undisputed</u>. |

1716326.1 / 128-004

- 26

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Bulman Dep. 43:1 – 22, Exh. 4. | |
| 55. On June 3, 2014, the day after Doyma's arrest, Bulman and other ICE agents went to the storage unit in Chula Vista. Bulman Dep. 55:13 – 22, Exh. 4. | Undisputed. |
| 56. At the storage unit, Bulman found 36 bottles of tequila and 15 additional plastic bottles of cuajo, which the agents seized. Bulman Dep. 56:8 – 14, Exh. 4. | Objection. Argumentative and misstates testimony as to use of the term "cuajo." Otherwise, Undisputed. |
| 57. Three of the bottles of cuajo found at the storage unit were selected for testing with a field test kit, which Bulman believed to be a Narco Pouch test kit.  A positive reach for the presence of methamphetamine resulted. Bulman Dep. 57:19 – 58:16; 60:7 - 19, Exh. 4. | Objection. Calls for speculation as Bulman did not perform the test. Argumentative and misstates testimony as to the use of the term "cuajo." Additionally, counsel's question to Bulman at 60:7-10 was a misstatement from Bulman's report as "cuajo" was never used to describe the seized bottles.<br><br>Otherwise, Undisputed as to the testimony of Bulman. |
| 58. ICE / HSI has a regular relationship with DEA such that DEA will test seizures of | Undisputed that Bulman stated this. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| materials at the border. Bulman Dep. 70:7 - 11, Exh. 4. | |
| 59. On June 9, 2014, DEA chemist Alexandra Ambriz came to the CBP evidence vault to take a representative sample of the cuajo seized from Doyma. Bulman Dep. 61:12 – 62:18, Exh. 4. | Objection. Argumentative and Misstates the testimony insofar as Ambriz appeared to test the suspected liquid methamphetamines.<br><br>Otherwise, Undisputed. |
| 60. Ambriz conducted a field test of the bottles of cuajo at the CBP evidence vault. Bulman Dep. 66:6 -21, Exh. 4. | Objection. Misstates the testimony and argumentative insofar as Ambriz appeared to test the suspected liquid methamphetamines.<br><br>Otherwise, Undisputed. |
| 61. On June 9, 2014, Bulman did not ask Ambriz when she would conduct an analysis of the cuajo at the lab, did not ask her to speed up the analysis, and did not ask Ambriz to complete the analysis as soon as possible. Bulman Dep. 68:7 – 18, Exh. 4. | Objection. Misstates the testimony and argumentative insofar as Ambriz appeared to test the suspected liquid methamphetamines.<br><br>Otherwise, Undisputed. |
| 62. Bulman has asked the DEA lab, between 10 and 20 times, to expedite laboratory testing of material. | Undisputed that he testified to this. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Bulman Dep. 72: 15 – 17; 73:7 – 9, Exh. 4. | |
| 63. The DEA lab has never refused Bulman's request to expedite lab analysis and have done such analyses on his request.<br><br>Bulman 73:10 – 16, Exh. 4. | Undisputed that he testified to this. |
| 64. On September 22, 2014, Assistant U.S. Attorney sent Bulman an e-mail which stated as follows:<br><br>Zach –<br>Please see if there is video from primary.  Also see if you can rush the lab results for both the border and the storage unit. Please send ROI [report of investigation] asap of storage unit.<br>Thanks,<br>Julia<br><br>Julia A Cline<br>Special Assistant U.S. Attorney<br>Southern District of California<br>880 Front Street, Room 6293<br>San Diego, CA 92101<br><br>Bulman Dep. 77:13 – 79:5, Exhibit 10 to Bulman's Deposition, document | Objection. Document speaks for itself. Best Evidence Rule.<br><br>Undisputed that the email states this. |

1716326.1 / 128-004

- 29

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| bates no. USA_0156 – 0157, Exh. 20. | |
| 65. As a result of AUSA Julia Cline's e-mail, Bulman wrote an e-mail on September 24, 2014, to officials at the Port of Entry requesting the video of Doyma from primary.<br><br>Bulman Dep. 78:6 – 14; USA_0156, Exh. 4. | Undisputed. |
| 66. Officials at the Port of Entry responded to Bulman's request within 24 hours and the video was turned over to AUSUA Julia Cline.<br><br>Bulman Dep. 86:1 – 18, Exh. 4. | Objection. Misstates/mischaracterizes testimony of Ofc. Bulman.  Bulman never responded to the question posed in Plaintiff's citation.<br><br>Otherwise, Undisputed. |
| 67. Bulman did not send any e-mail to DEA asking for a "rush" on the laboratory analysis.  He did not call the DEA lab to request a rush.  Bulman did not write any memo for a rush request.  He did not ask anyone at his office to contact the DEA lab.  Bulman did not do anything to expedite the laboratory testing or request | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| a rush on the results.<br>Bulman Dep. 86:19 – 88:12, Exh. 4. | |
| 68. Bulman never spoke to anyone at the DEA lab in October 2014 to request that the lab do an analysis in Doyma's case.<br>Bulman Dep. 89:22-25, Exh. 4. | Undisputed. |
| 69. Bulman never spoke to anyone at the DEA lab in November 2014 to request that the lab do an analysis in Doyma's case.<br>Bulman Dep. 90:1-4, Exh. 4. | Undisputed. |
| 70. AUSUA Julia Cline never rescinded her request to Bulman, or told Bulman, "Forget it. You don't have to get the lab results."<br>Bulman Dep. 89:2 – 4 Bulman Dep. | Undisputed. |
| 71. On September 27, 2014, AUSA Matt Sutton sent Bulman an e-mail asking Bulman to secure the video of Doyma from the Port of Entry and to check with the DEA lab on their analysis for this case.<br>Zach Bulman email, USA_0998, attached hereto as Exhibit 13. | Objection. Document speaks for itself. Best Evidence Rule.<br><br>Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 72. On October 15, 2014, Bulman responded to AUSA Sutton's email, stating he had secured the video of Doyma from the Port of Entry.  Bulman gave no response to the request to check with the DEA lab regarding the analysis.<br><br>Zach Bulman email, USA 0997 – 0998, Exh. 13. | Objection. Document speaks for itself. Best Evidence Rule.<br><br>Undisputed. |
| 73. On December 4, 2014, Bulman sent Sutton an e-mail, forwarding the results from the DEA lab regarding Doyma's case.<br><br>Zach Bulman email, USA 0997, USA 0999, Exh. 13. | Objection. Document speaks for itself. Best Evidence Rule.<br><br>Undisputed. |
| 74. On June 9, 2014, DEA chemist Alexandra Ambriz went to the evidence locker with Bulman to take samples from the bottles of cuajo; there were 19 bottles of cuajo in total.<br><br>Dep. Tr. Alexandra Ambriz (hereinafter "Ambriz Dep.") at 103:6 – 23, attached hereto as Exhibit 5. | Objection. Misstates the testimony and argumentative insofar as Ambriz did not test "cuajo," she tested "samples" of each bottle and Ambriz did not testify that Bulman was present.<br><br>Otherwise, Undisputed. |
| 75. Ambriz did a field test of the | Objection. Argumentative and |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| cuajo using the Narco Pouch 923 on June 9, which gave a "positive" result.<br><br>Ambriz Dep. 105:13 – 21; USA_0991 – 0992, Exh. 5. | misstates the testimony insofar as Ambriz did not test "cuajo" and argumentative as to quotation marks around positive.<br><br>Otherwise, Undisputed. |
| 76. Ambriz is a senior forensic chemist at the Drug Enforcement Administration (DEA).  Her primary job duties include analyzing evidence for the presence or absence of controlled substances, writing reports based on such analyses, and testifying in court.<br><br>Ambriz Dep. 8:20 – 9:8, Exh. 5. | Undisputed. |
| 77. As part of her employment, Ambriz was trained for six-months at a DEA laboratory in Chicago, Illinois, and then received an additional one month of training in Quantico, Virginia.<br><br>Ambriz Dep. 12:9 – 15, Exh. 5. | Undisputed. |
| 78. Ambriz knew a presumptive test would not establish, to a degree of scientific certainty, the | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| identity of the liquid being tested. Ambriz Dep. 107:6 – 10, Exh. 5. | |
| 79. Ambriz knew a presumptive test could only establish that the substance being tested contained a secondary amine. Ambriz Dep. 107:11 - 15, Exh. 5. | Objection. Misstates testimony, misrepresents facts and testimony. The statement is false as phrased but assuming the phrasing is simply an error/typo: Undisputed that Ambriz knew a Sodium Nitroprusside tests for a secondary amine. |
| 80. Ambriz would never testify in court that a liquid did or did not contain a controlled substance based on a presumptive test alone. Ambriz Dep. 107: 21 – 108:3, Exh. 5. | Undisputed. |
| 81. The general consensus or policy at the DEA is that lab employees do not testify based on presumptive tests. Ambriz Dep. 108:4 – 6, Exh. 5. | Undisputed. |
| 82. Ambriz was taught that a field test or a presumptive test is *not* a confirmatory test, or a definitive test. | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Ambriz Dep. 108:7 – 13, Exh. 5. | |
| 83. On June 9, 2014, Bulman did not ask Ambriz to do a rush analysis of the cuajo. <br> Ambriz Dep. 110:8 – 10, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as Ambriz did not test "cuajo." <br><br> Otherwise, <u>Undisputed</u>. |
| 84. Ambriz has received requests to do rush analyses before. <br> Ambriz Dep. 110: 11 - 13, Exh. 5. | <u>Undisputed</u> that she testified to this. |
| 85. There is a standard procedure for requesting rush analyses and a standard form that can be completed to request the rush of the lab analysis. <br> Ambriz Dep. 110:11 – 17, Exhibit 4 to Ambriz Deposition, Exh. 5. | <u>Undisputed</u>. |
| 86. The "Rush Analysis Request Form" is a form Ambriz has seen hundreds of times and it is a very common form. <br> Ambriz Dep. 110:20 - 111: 6, Exh. 5. | <u>Undisputed</u> that she testified to this. |
| 87. In Ambriz's experience, ICE, CBP, DEA, HSI, and ATF are all aware of the rush request form and procedure because she | <u>Undisputed</u> that she testified to this. |

1716326.1 / 128-004

- 35

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| has received the form from such agencies many times. Ambriz Dep. 111:7 – 112:3, Exh. 5. | |
| 88. James Malone, the director of the regional DEA laboratory in Vista, estimated more than 300 rush requests had been made to the lab in 2014. Dep. Tr. James Malone (hereinafter "Malone Dep.") at 18:5 – 19, attached hereto as Exhibit 7. | <u>Undisputed</u> that he testified to this. |
| 89. Bulman never requested Ambriz conduct a rush analysis of the cuajo in this case, either orally, via e-mail, or by submitting the rush analysis form. Ambriz Dep. 112:4 – 17, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as Ambriz did not test "cuajo." Otherwise, <u>Undisputed</u>. |
| 90. Ambriz would have tried to accommodate Bulman's request for a rush analysis, had he made one, and endeavors to accommodate all agents' rush requests. Ambriz Dep. 112: 18 – 113:7, Exh. 5. | Objection. Calls for speculation. Incomplete hypothetical. Otherwise, <u>Undisputed</u> that she testified to this. |
| 91. The DEA laboratory received the cuajo on July 3, 2014. | Objection. Argumentative and |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Ambriz Dep. 114:2 – 8, Exh. 5. | misstates the testimony insofar as the DEA laboratory did not test "cuajo." <br><br> Otherwise, Undisputed. |
| 92. On August 18, 2014, Ambriz received the cuajo from the evidence vault at the DEA laboratory.  She had been assigned to do the lab analysis a few days before this date. <br> Ambriz Dep. 116:12 – 16, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as the DEA laboratory did not test "cuajo." <br><br> Otherwise, Undisputed. |
| 93. GC/MS is the most common instrument for analysis used in the DEA laboratory and one of the most accurate. <br> Ambriz Dep.   121:7 - 15, Exh. 5. | Undisputed. |
| 94. Ambriz conducted GC/MS testing on samples from the cuajo bottles seized from Doyma. <br> Ambriz Dep. 121:16 – 21, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as the DEA laboratory did not test "cuajo." <br><br> Otherwise, Undisputed. |
| 95. Ambriz completed the GC/MS test of the cuajo by September 10, 2014; the GC/MS results showed no controlled substances | Objection. Argumentative and misstates the testimony insofar as the DEA laboratory did not test "cuajo." |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| in the cuajo.<br>Ambriz Dep. 121:16 – 24; 139:16 - 25, Exh. 5. | Otherwise, <u>Undisputed</u>. |
| 96. Ambriz then conducted additional GCFID analysis after the GC/MS testing to ensure there was no other controlled substance in the sample that Ambriz could have missed.<br>Ambriz Dep. 133:14 – 24, Exh. 5. | <u>Undisputed</u>. |
| 97. By September 29, 2014, Ambriz had completed all GC/MS and GCFID testing.  The test results were sufficient for Ambriz to conclude that no controlled substances were present in any of the samples of cuajo Ambriz had tested.  By the end of September, Ambriz concluded with 95 percent confidence that there was no controlled substances in the cuajo.<br>Ambriz Dep. 120:22-121:1; 124:16 – 19; 133:25 – 134:15, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as the DEA laboratory did not test "cuajo."<br><br>Otherwise, <u>Undisputed</u>. |
| 98. Ambriz had been taught and trained that a person charged | |

1716326.1 / 128-004

- 38

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| with a crime regarding controlled substances, one of the elements of the crime is that the substance is illegal to possess or distribute. Ambriz had been taught the purpose for her testimony was to provide evidence and testimony on the issue of the controlled substance. Ambriz Dep. 127:12 – 128: 2, Exh. 5. | Undisputed that she testified to this. |
| 99. Ambriz had been trained that in drug cases, one of the elements of possession with intent to distribute or import is that the substance involved is, in fact, a controlled substance. Ambriz had been trained that if it was proven that the suspect substance is not a controlled substance, then the person has not committed a crime. Ambriz Dep. 128:3 - 16, Exh. 5. | Undisputed that she testified to this. |
| 100.      Ambriz understood that if a person had been charged with a crime for possessing methamphetamine, on the basis | Objection. Vague and Ambiguous. Unintelligible. Objection. Argumentative and misstates the testimony insofar as |

1716326.1 / 128-004

- 39

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| of the cuajo in the bottles, this was not true because there was no methamphetamine in those bottles.<br><br>Ambriz Dep. 129:6 – 12, Exh. 5. | Ambriz did not test "cuajo."<br><br>Otherwise, Undisputed that the deposition transcript indicates Ambriz agreed with the unintelligible question posed. |
| 101.    At the end of September, when Ambriz had made her finding that the cuajo bottles contained no methamphetamine, she did not alert Bulman, her supervisor, or any laboratory official.<br><br>Ambriz Dep. 129:13 – 130:8, Exh. 5. | Objection. Argumentative and misstates the testimony insofar as Ambriz did not test "cuajo."<br><br>Otherwise, Undisputed. |
| 102.    Once Ambriz completes all laboratory testing, her report is submitted to her supervisor, who reviews and approves the report.  A laboratory assistant is then the one who sends the lab report to the requesting agency.<br><br>Ambriz Dep. 134:16 – 23, Exh. 5. | Undisputed that she testified to this. |
| 103.    On average, it takes Ambriz one week to collect all of her data, write her report, and submit the report to her | Undisputed that she testified to this. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| supervisor. Ambriz Dep. 135:16 – 136:6, Exh. 5. | |
| 104.      By September 29, 2014, Ambriz had completed all laboratory testing in this case, including both GC/MS and GCFID.  She did not submit her report to her supervisor until November 21, 2014.  Ambriz's supervisor took one additional week to approve her report, authorizing distribution of the report on November 28. Ambriz Dep. 135:3 – 11; 136:13 – 15, Exhibit 2 to Ambriz deposition—lab analysis report, Exh. 5. | Undisputed that she testified to this. |
| 105.      At the end of September, had Bulman called Ambriz to request a rush analysis, she would have told him, "It's done" and reported the finding of "no controlled substance." Ambriz Dep. 124: 20 - 25, Exh. 5. | Objection. Calls for speculation. Lacks foundation. Incomplete hypothetical.<br><br>Otherwise, Undisputed that she testified to this hypothetical. |
| 106.      Allen Miller is the product manager for the forensics division at Safariland. | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| Dep. Tr. Allen Miller (hereinafter "Miller Dep.") at 6:11 – 14, attached hereto as Exhibit 6. | |
| 107.    It is Miller's responsibility to review the instructions for the Narco Pouch 923.<br>Miller Dep. 22:15 – 21, Exh. 6. | Undisputed. |
| 108.    The instructions for the Narco Pouch 923 have basically not changed since the mid-1960s when Safariland's predessor company, ODV, was founded.<br>*Id.* | Objection. Vague and ambiguous as to "basically haven't changed," and whether statement referred to since the 15 years Miller has been with the company or since the mid-1960s. Because the statement is immaterial and irrelevant and disputes over matters that do not affect the right for dismissal under applicable substantive law on a motion for summary judgment (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)), Safariland will not dispute. |
| 109.    The Narco Pouch 923 is a presumptive test that produces a color change, based on a chemical reaction.  The color of | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
| --- | --- |
| the subsequent reaction determines whether there is a presumptively positive reaction.<br>Miller Dep. 30:3 – 8, Exh. 6. | |
| 110.    A presumptive test is neither definitive or certain.<br>Miller Dep. 32:8 – 11, Exh. 6. | <u>Undisputed.</u> |
| 111.    Presumptive tests such as the Narco Pouch 923 tests for a family of chemical compounds, or a series of related chemical compounds, some of which may be illegal substances and many of which may not be illegal.<br>Miller Dep. 33:4 – 9, Exh. 6. | <u>Undisputed.</u> |
| 112.    The Narco Pouch 923 is a test that reacts positively to any secondary amine.<br>Miller Dep. 39:25 – 40:3, Exh. 6. | <u>Undisputed.</u> |
| 113.    One secondary amine is methamphetamine.<br>Miller Dep. 40:4 – 5, Exh. 6. | <u>Undisputed.</u> |
| 114.    The Narco Pouch 923 tests for the presence of any secondary amine, it does not specifically test for the presence | Objection. Vague and ambiguous.  The product tests for the presence of a secondary amine.  Methamphetamine and MDMA are secondary amines. |

1716326.1 / 128-004

- 43

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| of methamphetamine or MDMA. Miller Dep. 47:9 - 14, Exh. 6. | To the extent this is consistent with the proffered statement, <u>Undisputed</u>. |
| 115.    With the 923 test, if the chemical reaction with the substance produces a blue color change, then there is a secondary amine.  If there is no secondary amine, then the color change that results is burgundy. Miller Dep. 46: 15 – 47:4, Exh. 6. | Objection. Misstates and misrepresents facts. Vague and ambiguous. If there is no secondary amine present, there is no color change.  The natural color of the test is burgundy. To the extent this is consistent with the proffered statement, <u>Undisputed</u>. |
| 116.    A presumptive color test alone does not give a basis to find probable cause to arrest. Miller Dep. 33:17 – 25, Exh. 6. | Objection. Misstates the law.  Lacks foundation. Calls for a legal conclusion.  Calls for an expert opinion. Calls for speculation.  Vague and ambiguous and overly broad as to what jurisdiction, country, state, federal, military law or government the statement is purported to be in regard. Misstates the testimony insofar as Miller does "not *advocate* the position that a color test alone gives a basis to find probable cause." Objection as immaterial and irrelevant as a matter of law due to the application of the sophisticated user defense. *See* Opp at 19-20. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). <u>Disputed</u>. |
| 117.    Safariland's training material sets forth that a color test alone is not sufficient to arrest and it is only one factor among other in determining whether there is probable cause to arrest.<br>Miller Dep. 34:5 – 35: 16, Exh. 6. | Objection insofar as this statement is being used to suggest a fact of law: Lacks foundation. Calls for a legal conclusion.  Calls for an expert opinion.<br><u>Undisputed</u> in that Safariland's training materials advocate this method of use. |
| 118.    Positive confirmation refers to a definitive test for a particular substance as opposed to a presumptive test for a variety of substances of a generally similar characteristic.<br>Miller Dep. 37:12 – 20, Exh. 6. | <u>Undisputed</u>. |
| 119.    The gold standard for confirmation of a particular substance is the GC/MS, gas chromatography mass | <u>Undisputed</u>. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| spectrometry test. Miller Dep. 37:21 – 25, Exh. 6. | |
| 120.    There are multitudes of other secondary amines that will give the same result with the same color change as methamphetamine and ecstasy on the Narco Pouch 923. Miller Dep. 40:9 – 15 | Undisputed. |
| 121.    For example, if diphendyramine, a major ingredient in the medication, Dramamine, is a secondary amine, then a test of Dramamine using the Narco Pouch 923 would result in the same dark blue color reaction, which methamphetamine would produce. Miller Dep. 42:23 – 43:4, Exh. 6. | Objection. Calls for speculation or expert opinion, and assumes facts not in evidence. Incomplete hypothetical. Irrelevant. Lacks foundation. Vague, ambiguous, and unintelligible. This is not an appropriate "fact" for a Statement of Undisputed Facts.  It's an incomplete hypothetical statement that requests multiple irrelevant assumptions.  Otherwise, Undisputed that a secondary amine will produce a positive reaction in a Sodium Nitroprusside test. |
| 122.    Miller has never compiled a list of commonly available | Objection. Misstates the testimony. *See* Plaintiff's SUF #152.  Argumentative. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| substances or commercial products that will produce a dark blue color reaction, the same as methamphetamine or MDMA, on the Narco Pouch 923. Miller Dep. 44:7 - 11, Exh. 6. | Disputed insofar as it contradicts SUF #152. |
| 123.    Miller does not have any data on the number of times users have reported a positive blue color result with the Narco Pouch 923 when the tested substance was not methamphetamine. Miller Dep. 45:1 – 13, Exh. 6. | Objection. Misstates the testimony at Miller Dep. 45:1-13.

Disputed. |
| 124.    The Narco Pouch 923 is not advertised as a test for the presence or absence of secondary amines.  It is advertised as a presumptive test for methamphetamine and MDMA. Miller Dep. 47:23 – 48:9, Exh. 6. | Objection. Misstates the testimony. Misstates facts.  See Plaintiff's SUF #125. Vague and ambiguous, argumentative, calls for a legal conclusion, assumes facts not in evidence, lacks foundation. Safariland does not "advertise" its products.  Declaration of A. Miller in Support of Safariland's Motion for Summary Judgment, Dkt. No. 50-2 ("Miller Decl.") at ¶ 13.  Second, the test is, by definition, a presumptive test |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | for methamphetamine and MDMA. Okorocha Depo. at 89:17-20, 101:2-13, Ex. N to Smelser Decl., UN Manual at 17-18, Ex. P to Smelser Decl., Report of A. Duggan at 5, 8-15, Ex. M to Smelser Decl.  It is also a test for secondary amines. Miller Decl. at Ex. A, p.16.  Information of both characteristics are provided . *Id.* |
| 125.    Safariland's training material states the 923 test is a test for the presence of secondary amines with methamphetamine and ectasy both secondary amines.<br>Miller Dep. 49:16 – 50:5, Exh. 6. | Undisputed. |
| 126.    Safariland's training program is self-directed, meaning a law enforcement officer would need to request the training material from Safariland.<br>Miller Dep. 50:7 – 11, Exh. 6. | Objection. Misstates and mischaracterizes the testimony. Misstates facts.  Assumes facts not in evidence and lacks foundation.  One of the available training programs is a self-directed version that an officer or agency could request in order to conduct the training on its own in-house without the involvement of a Safariland representative. *See* cited |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | testimony; *see also* Miller Decl, Ex. A, p. 6.<br><br>Disputed as explained above. |
| 127. Safariland does not send out any memorandum or correspondence to its customers indicating that review of the training material is essential to a proper understanding of the Narco Pouch 923.<br>Miller Dep. 50:12 – 18, Exh. 6. | Objection. Argumentative. Assumes facts not in evidence and lacks foundation. Safariland does not direct market. Miller Decl. at ¶ 13; *see also* Miller Dep. at 50:12-51:1, Ex. 6 to Jun Decl. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Undisputed that Safariland does not direct market. |
| 128. Safariland does not send out letters to either distributors or directly to customers any warning or statement that review of Safariland's training material | Objection. Argumentative. Assumes facts not in evidence and lacks foundation. Safariland does not direct market. Miller Decl. at ¶ 13; *see also* Miller Dep. at 50:12-51:1, Ex. 6 to |

1716326.1 / 128-004

- 49

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| is critical or essential to understanding the 923 test. Miller Dep. 50:19 – 51:1, Exh. 6. | Jun Decl.  Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).<br><br>Undisputed that Safariland does not direct market. |
| 129.    Miller is aware Safariland markets its field tests to law enforcement officers who are using them in situations where they are relying on the field tests, in part, to decide whether or not to arrest a person. Miller Dep. 54:13 - 19, Exh. 6. | Objection. Misstates the testimony. Incomplete hypothetical. Argumentative, vague and ambiguous as to the term "market" as Safariland does not "market" and as to the terms "relying" and "in part." Objection to the extent is seeks a legal conclusion or expert testimony in the determination of probable cause, police practices and procedures, and/or the legal meaning of "relying." Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. |

1716326.1 / 128-004

- 50

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).<br><br>Disputed as to any allegation of marketing. Undisputed that law enforcement use the test in the course of their employment and in carrying out the duties in connection with the performance of their job, including determining when to arrest a suspect. |
| 130. Miller understands that the Safariland field tests are being used by law enforcement officers, not people with chemical or forensic training. Miller Dep. 53:6 – 9, Exh. 6. | Objection. Misleading. Assumes facts not in evidence. Lacks foundation. Argumentative. Vague and Ambiguous. Law enforcement officers, have forensic training. Opp. at 8-9, 210-21. The question posed to Miller is incorrectly phrased. Undisputed that Miller agreed that he understands law enforcement officers use Safariland's product. Disputed in that people with chemical and forensic training do use Safariland's product |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | and that law enforcement officers have forensic training. |
| 131.    Miller testified as follows at his deposition:<br><br>Q. All right. With respect to that, is there any statement in the sales material, that is to say, the literature that is sent in connection with soliciting the sale from the government for them to purchase the 923, is there any statement that says you must train your people in the proper understanding and meaning of this forensic test 923?<br><br>A. No.<br><br>Q. Is there anything that says that in order to do a good job as a law enforcement agent, you should make your police personnel, who are going to be using this forensic test 923 to decide to arrest or not, make sure they watch the training materials that we provide you?<br><br>A. No, not directly. If somebody calls and asks, we always -- we always pop up the training but there's no marketing materials out there | Objection. Argumentative. Assumes facts not in evidence and lacks foundation that there are sales materials, solicitations, or marketing materials. Misleading/mischaracterizes testimony, Vague and ambiguous, and Compound in that Miller is stating no to the existence of sales materials, solicitation, marketing, not some other part of the question, which Plaintiff attempts to insinuate (*see* 55:1-3, stating "there's no marketing materials out there..."). As a result, the proffered language is irrelevant as if it cannot be determined which portion of the statement was responded to, then it does not prove or disprove any fact, element, or claim. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 |

1716326.1 / 128-004

- 52 -

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| that dictate you must, should, shall, whatever train. Miller Dep. 55:12 – 56:3, Exh. 6. | (1986). Additionally, irrelevant and immaterial pursuant to the sophisticated user defense and bulk seller doctrine. Undisputed that the citation from the deposition of A. Miller includes the quoted text. Disputed in all other respects. Safariland does not have "sales materials." Safariland does not have "marketing materials." Safariland does not "solicit." Miller Decl. at ¶ 13. It is a bulk seller that sells to law enforcement agencies around the world. Opp. at 21-23; Miller Decl. at ¶ 9. Safariland communicates that training does exist and recommends law enforcement agencies undergo the training. Miller Dep. 50:1-3; Miller Decl. at ¶10, Ex. A, p. 7 |
| 132. Miller has no specific recollection of having a conversation with anyone at CBP regarding the desirability and/or necessity of having their personnel review the training | Objection. Misstates the testimony in that in the prior question, Miller states he may have had such a conversation, but has no specific recollection. *See* Miller Depo. 56:4-14. Argumentative and Irrelevant in that |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| material.<br>Miller Dep. 56:15 – 19, Exh. 6. | the lack of memory does not prove the lack of existence.<br>Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Otherwise, <u>Undisputed</u> that Miller testified he had no specific recollection as to the details of his conversations with CBP. |
| 133.　　In the past year before his deposition, other than this case, Miller could not recall receiving any report that the 923 displayed a positive reaction for a substance that was not methamphetamine or MDMA.<br>Miller Dep. 56:20 – 58:3, Exh. 6. | <u>Undisputed.</u> |
| 134.　　Safariland does not keep regular logs or compilations of | Objection. Mischaracterizes testimony in that Miller testified he has a |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| information regarding positive reactions provided by Narco Pouch field tests for substances that ultimately are not controlled or illicit substances.<br><br>Miller Dep. 58:4 – 8, Exh. 6. | spreadsheet of such information. Miller Dep. 59:10-16, Ex. 6 to Jun Decl.  Vague and ambiguous as to "regular logs or compilations" as Miller clearly did not understand the question. *Id.*<br><br>Immaterial and Irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Disputed to the extent contradicts Miller Dep. at 59:13-16. |
| 135.     There is no official Safariland record or database of reports where the Narco Pouch field test produced a positive reaction for a substance that was not a controlled substance.<br><br>Miller Dep. 59:10 – 16, Exh. 6. | Objection. Mischaracterizes testimony and vague and ambiguous as to "official." Miller testified that he has a spreadsheet of such information. Miller Dep. 59:13-16.<br><br>Immaterial and Irrelevant. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Disputed to the extent contradicts Miller Dep. at 59:13-16. |
| 136.    In 2014, the Narco Pouch 923 box contained the following language:<br><br>NarcoPouch results in the palm of your hand. NarcoPouch ODV's premier product is one of the best presumptive field drug tests in the industry. Each test is self-contained and premeasured in a seal, color reactions are immediately.<br><br>Miller Dep. 66:11 – 20, Exh. 6; Safariland Narco Pouch 923 packaging, instruction and training manual, SAFARILAND 00024, attached hereto as Exhibit 18. | Objection.  Lack of foundation.  No such deposition testimony or product packaging is attached. Best Evidence Rule - the document speaks for itself. Misstates document.  Plaintiff's attempted quote is incorrect and incomplete with typos and mistakes. Although not a material fact and does not change that Safariland is entitled to judgment as a matter of law on all of Plaintiff's claims,  Disputed, as the language is simply incorrect. |
| 137.    The Narco Pouch 923 box stated, "**Methamphetamine & MDMA Reagent.**  A Presumptive Test for Methamphetamine and MDMA (Ecstacy)."<br><br>SAFARILAND 000027, Exh. 17. | Undisputed. |

1716326.1 / 128-004

- 56

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| (emphasis in the original). | |
| 138.    The pouches contained within the 923 box stated, **"Methamphetamine MDMA (Ecstasy) REAGENT"** SAFARILAND 000028, Exh. 17. (emphasis in the original) | Objection. Mischaracterizes statements by failing to include remainder of language.<br><br>Otherwise, <u>Undisputed</u>. |
| 139.    Miller testified that results from field tests should not be the sole element for a determination of probable cause. Miller Dep. 70:12 – 16, Exh. 6. | Objection. Misstates testimony. Calls for expert testimony, calls for a legal conclusion and irrelevant as Miller is not the government, court of law, jury, officer/agent, etc. Vague and ambiguous as to the meaning of "the sole element of your probable cause." Miller Dep. at 70:12-13. Argumentative, irrelevant and immaterial as there is no evidence that a field test was used as the sole element for a determination of probable cause in this case. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 |

1716326.1 / 128-004

- 57

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | (1986). Undisputed that Miller's personal opinion agrees with the statement that field tests should not be used as the sole element of probable cause. |
| 140.    The statement, "Do not use field test as the sole element of your probable cause" is not contained on the instruction sheet that comes with the Narco Pouch 923<br>Miller Dep. 70:17 – 21, Exh. 6. | Undisputed. |
| 141.    Miller testified he believed the following statement to be true: "whenever you have results that are questionable, always err on the side of an inconclusive reading and forward your suspected material to the crime lab for verification."<br>Miller Dep. 71:4 – 11, Exh. 6. | Undisputed. |
| 142.    The instruction sheet for the Narco Pouch 923 states as follows:<br>"All suspect materials that do not | Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| produce a positive response should be sent to the lab for further testing." Miller Dep. 72: 6 – 11, Exh. 6. | |
| 143.    The instruction sheet does for the 923 *does not* state "suspect material that do produce a positive response should be sent to the lab for further testing." Miller Dep. 72:12 – 15, Exh. 6. | Objection. Argumentative. Misstates/mischaracterizes testimony, evidence, and facts.  *See* Miller Dep. at 71:4-72:5, Ex. 6 of Jun Decl. and SAFARILAND000055, Ex. 18 of Jun Decl. Best Evidence Rule - The document speaks for itself. Irrelevant and lack of foundation as to the quoted language.<br><br>Disputed the instruction sheet states "Always retain sufficient sample of suspect material for evidential analysis by the forensics laboratory,"  and Miller testifies to this.  Miller Dep. at 71:12-25; SAFARILAND000055, Ex. 18 of Jun Decl. |
| 144.    Safariland's training material, which Miller wrote, states as follows:<br><br>A positive predictable color change is only a presumed | Objection. Best Evidence Rule. The document speaks for itself.<br><br>Otherwise, Undisputed. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| positive result for the suspected compound.  In no way should the test results be considered a confirmation of identification<br><br>Miller Dep. 76:23 – 77:6, Exh. 6; SAFARILAND 168, Exh. 18 | |
| 145.    Miller did not put this language in the instruction sheet in the Narco Pouch 923 test kit.<br>Miller Dep. 77:7 – 10, Exh. 6. | Objection. Vague, ambiguous, and unintelligible as to "this language." Argumentative and mischaracterizes testimony. Miller Dep. 77:11-16, Ex. 6 to Jun Decl.  Miller states "it states on the front that it's a presumptive test." |
| 146.    Safariland's training material, which Miller wrote, states as follows:<br><br>Many man-made and natural chemicals could produce a positive indication for the presence of an illicit substance.<br>This language from the training material is not on the instructions sheet.<br>Miller Dep. 78:5 – 20, Exh. 6; SAFARILAND 168, Exh. 18. | Objection. Argumentative. Compound. Best Evidence Rule. The document speaks for itself.<br>Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23.<br>Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment.<br>*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | Otherwise, <u>Undisputed</u>. |
| 147.     In Safariland's training materials, Miller wrote:<br><br>It is important to note that all test results, positive or negative, should be confirmed by the crime laboratory.<br>Miller Dep. 79:1 – 5, Exh. 6;<br>SAFARILAND 168, Exh. 18. | <u>Undisputed</u>. |
| 148.     The instruction sheet for the Narco Pouch 923, however, only states as follows:<br>All suspect materials that do not produce a positive response should be sent to a lab for further testing.<br>Miller Dep. 79:6 – 10, Exh. 6;<br>SAFARILAND 56, Exh. 18. | Objection. Argumentative. Misstates testimony. *See* Miller Dep. at 71:4-72:5, Ex. 6 of Jun Decl. and SAFARILAND000055, Ex. 18 of Jun Decl.<br>Best Evidence Rule. The document speaks for itself.<br>Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23.<br>Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Disputed the instruction sheet states "Always retain sufficient sample of suspect material for evidential analysis by the forensics laboratory, " and Miller testifies to this.  Miller Dep. at 71:12-25; SAFARILAND000055, Ex. 18 of Jun Decl. |
| 149.    Safariland's training material, which Miller prepared, states:<br><br>Field tests are often misinterpreted as being probable cause or to establish probable cause.  Instead field testing is designed simply as confirmation of probable cause.<br><br>Miller Dep. 84:22 – 85:24, Exh. 6; SAFARILAND 165, Exh. 18. | Objection to the extent it calls for a legal conclusion or improper expert testimony.  Best Evidence Rule. The document speaks for itself.<br><br>Otherwise, Undisputed that Safariland's power point training presentation includes such a statement. |
| 150.    Safariland's training material, which Miller prepared, states:<br><br>You must have already established some form of probable cause (offer for sale, looks like, price like, offered as a particular substance) prior to starting your | Objection to the extent it calls for a legal conclusion or improper expert testimony.  Best Evidence Rule. The document speaks for itself.<br><br>Otherwise, Undisputed that Safariland's power point training |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| testing procedures.<br><br>This statement does not appear on the instruction sheet for the Narco Pouch 923.<br>Miller Dep. 86:2 – 15, Exh. 6. | presentation includes such a statement. |
| 151.    In an e-mail dated May 14, 2012, Miller stated the following, which he admitted were truthful statements:<br><br>Colorimetric tests should be the last item to be checked off the probable cause list, not the first, second, or even third. There are plenty of instances that can be found where colorimetric tests were used to wrongly detain a "suspect" only to have the compound or substance test negative in the laboratory. In almost every case it can be found that the detaining officer missed some key flags of probable cause along the way.<br><br>Miller Dep. 89:3 – 92:9, Exhibit 1 to Miller Deposition, Exh. 6; see also Email from Miller on May 14, 2012, hereto attached as Exhibit 17. | Objection to the extent it calls for a legal conclusion or improper expert testimony.  Best Evidence Rule. The document speaks for itself.<br>Lack of foundation and authenticity as to the email.<br><br>Otherwise, Undisputed that the email contains such statements. |
| 152.    In the May 14, 2012 e- | Objection. Lack of foundation and |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| mail, Miller further stated:<br><br>Another reason is that we have thousands of users that use thousands of tests on a daily basis. We don't actively collect or requests (*sic*) the results of all the tests that they use daily. To do so would be a full time position of data collection, and frankly, I am not sure what all that data would get us other than a full hard drive. We collect some information regarding false indications or new drugs, mainly pharmaceuticals, that our tests are used on, but again, this is something that we don't actively pursue.<br><br>Miller testified this was a true statement.<br>Miller Dep. 92:1 – 93:1, Exh. 6; *see also* Exh. 17. | authenticity. Vague and ambiguous. Best Evidence Rule. The document speaks for itself.<br><br>Otherwise, <u>Undisputed</u> that the email contains such statements. |
| 153.   Dr. Vredenburgh testified to the following as one of the main factors that led to the six-month long detention of Plaintiff:<br>Clearly, there's not enough warnings and knowledge in the community that this is an urgent situation and that someone was | Objection. Outside scope of expertise and improper opinion testimony under Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| being held based on a test that did not test for what it's purporting to test for but in fact tested for more common ingredients and that, based on that, somebody was being held for more than six months.  So all those factors interacted in the fact that no urgency happened, the -- there was no communication even after it was known that it was not a controlled substance.<br><br>Dep. Tr. Alison G. Vredenburgh, P.h.D, CPE (hereinafter "Vredenburgh Dep.") at 20:9-19, attached hereto as Exhibit 8. | prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17; Okorocha Depo. at 92:3-15. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix,* |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).<br><br>Disputed to the extent it is being offered as a true statement.  Undisputed that Ms. Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |
| 154.      Dr. Vredenburgh postulated that another issue is that the Border Patrol Officers did not know that the test was not testing for an illicit substance.<br>Vredenburgh Dep. 21:10-18, Exh. 8. | Objection. Outside scope of expertise and improper opinion testimony under Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). <u>Disputed</u> to the extent it is being offered as a true statement. Undisputed that Ms. Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |
| 155.    Dr. Vredenburgh distinguishes between illicit | Objection. Outside scope of expertise and improper opinion testimony under |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| substance tests that has proper hazard management and controls, such as a test that has two drugs that it specifies on the box and only those, then that would be controlling it through design. In other words, that would design out the hazard and eliminate the potential for an incorrect conclusion that the results were for those two things that are described on the package. Vredenburgh Dep. 21:1-11, Exh. 8. | Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's forensic toxicologist/chemist expert agrees that the Narco Pouch 923 Test is a Simon's reagent or sodium nitroprusside test and that such tests are appropriate and validated for the presumptive identification of methamphetamine. Okorocha Depo. at 89:17-20, 101:9-13, |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Ex. H to Smelser Decl.  Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). <u>Disputed</u> to the extent it is being |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | offered as a true statement. Undisputed that Ms. Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |
| 156.    Dr. Vredenburgh's opinion regarding the deficiencies of the warnings or instructions on the Safariland product is twofold:<br><br>Well, essentially, there are no warnings saying that this test is a test that springs from many different things and that an arrest should not be made without definitive testing being done on the product.<br><br>And secondly, there's misleading information on the package because it specifies meth and MDMA reagent, and so -- the only warning says it's not designed to test liquids except for GHB, but there is no warning saying that a lot of other substances would also indicate a positive result.<br>Vredenburgh Dep. 26:17-27:4, Exh. 8. | Objection. Vague and ambiguous, unintelligible, outside scope of expertise, lacks foundation, speculative, argumentative, irrelevant, and misrepresents the evidence as to "misleading information on the package[.]" Alleged testimony is not attached.<br><br>Objection. Outside scope of expertise and improper opinion testimony under Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl.<br><br>Objection on the grounds that |

1716326.1 / 128-004

- 71

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Disputed to the extent it is being offered as a true statement. Disputed |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | due to the absence of the alleged testimony. |
| 157.    Dr. Vredenburgh opines that the Officers did not feel there was a need to rush the DEA lab testing because Plaintiff was a liar, and that the field test had proven the cuajo mixture was meth. <br> Vredenburgh Dep. 32:21-33:7, Exh. 8. | Objection. Outside scope of expertise and improper attempt to assert testimony pursuant to Rule 702. Lacks foundation, speculative, argumentative, irrelevant, and misstates testimony, evidence and facts.  Vague, ambiguous, unintelligible. Vredenburgh's opinion is not based upon any actual facts or data as required under Rule 702 and Vredenburgh has no expertise in chemistry, field drug tests, police practices and is not qualified to provide expert testimony on this subject. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Further, the Officers did not handle the DEA lab testing.  Their involvement with Plaintiff ended after Officer Gibbons arrested Michel.  Gibbons |

1716326.1 / 128-004

- 74 -

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | called HSI Agent Bulman, who then handled the case thereafter, including requesting the lab testing and managing Michel's prosecution.  Garza Dep. at 46:18-47:7, 49:1-21, Ex. B to Smelser Decl.; Gibbons Dep. at 13:20-22, 22:1-8, Ex. C to Smelser Decl. The "feelings" of the CBP Officers are completely irrelevant and the proffered statement is unintelligible as each portion has nothing to do with the other. Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). <br><br> Disputed to the extent this sentence does not accurately reflect the testimony of Vredenburgh and is based on no actual facts, evidence, or |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | testimony of the officers. |
| 158.    Dr. Vredenburgh believes that there is more than enough room for a warning to be placed on the principal display panel on the field test box and in the instructions. Vredenburgh Dep. 36:17-24, 40:19-21, Exh. 8. | Objection. Lacks foundation, Irrelevant, and vague and ambiguous. <u>Undisputed</u> that Vredenburgh "believes" this. |
| 159.    Dr. Vredenburgh opines that putting a warning on the box, the pouch, or in the instructions would have prevented the injuries to Plaintiff, because there would be sufficient notice that there needs to be a follow-up confirmatory test. Vredenburgh Dep. 41:10-42:9, 70:13-25, 72:9-13, 88:1-6, Exh. 8. | Objection. Outside scope of expertise and improper attempt to assert testimony pursuant to Rule 702. Lacks foundation, speculative, argumentative, irrelevant, and unintelligible. There are no facts or data to support this opinion. *See* Opp. at 23-25. And, <u>there was follow-up confirmatory testing done</u>.  Ambriz Dep. at 56:20-57:7, 83:1-13, 94:11-17, Ex. E to Smelser Decl. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14- |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
| --- | --- |
| | 22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory.  Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. Okorocha Dep. at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).<br><br>Undisputed that Ms. Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |

1716326.1 / 128-004

- 78

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 160.    Dr. Vredenburgh explains how the test is both misleading and a false positive, and both prevent Officers from rushing a confirmatory test:<br><br>There's a nuance difference between the two, but if they think they're testing for meth, then it's a false positive. If it's a test and they think they're just testing for a secondary amine, then it's misleading. So -- but either way, they -- if they are using this test for probable cause and they are not aware that other substances, including what she said -- she was very clear that it was to make cheese and they were calling her a liar.<br><br>Vredenburgh Dep. 42:11-43:18, Exh. 8. | Objection. Misstates testimony, evidence and facts.  The Officers were not prevented from rushing a confirmatory test.  The Officers do not handle submitting the substance to the lab or rushing the testing.  HSI, DEA, and the U.S. Attorney's Office handle this. Garza Dep. at 46:18-47:7, 49:1-21, Ex. B to Smelser Decl.; Gibbons Dep. at 13:20-22, 22:1-8, Ex. C to Smelser Decl. Second, the backlog with the DEA prevented HSI and DEA from rushing the lab results.  Notably, Plaintiff failed to cite to any Officer's/Agent's testimony in support of this statement.<br><br>Objection. Outside scope of expertise and improper attempt to assert testimony pursuant to Rule 702. Lacks foundation, speculative, vague and ambiguous, unintelligible, compound, argumentative, irrelevant.  There are no facts or data to support this opinion. Also, Vredenburgh has absolutely no qualifications in police practices, |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. |
| | Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. Id. at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that |

1716326.1 / 128-004

- 80

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). |
| | As to the first portion of the sentence: Disputed that the test is misleading, the existence of "false positives," that there is any evidence that the Officers were prevented from rushing a confirmatory test, and that the Officers were even involved in requesting confirmatory testing. The Officers do not handle requesting confirmatory testing. This is handled by ICE, the DEA, and the U.S. Attorney. Garza Dep. at 46:18-47:7, 49:1-21, Ex. B to Smelser Decl.; Gibbons Dep. at 13:20-22, 22:1-8, Ex. C to Smelser Decl. Undisputed that Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |
| 161. Dr. Vredenburgh opines that the Officers were not aware | Objection. Outside scope of expertise and improper opinion testimony under |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| that the filed test was not a proper basis for probable cause, and that other products could produce a positive test. Vredenburgh Dep. 44:9-25, Exh. 8. | Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Misstates the testimony and evidence of the arrest and testing of the CBP Officers. Garza Dep. at 46:9-15, 49:1-11, Ex. B to Smelser Decl.; Gibbons Dep. at 10:23-12:7; 40:8-16, Ex. C to Smelser Decl. Vredenburgh has no factual basis to make such an opinion. Further, she has no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Indeed, she is wrong that a field test is not a proper basis for probable cause. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl. Additionally, the statement lacks foundation because the cited testimony is missing from Plaintiff's declaration.

Objection on the grounds that Vredenburgh contradicts Plaintiff's |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied* |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
| --- | --- |
| | *Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Disputed to the extent it is being offered as a true statement regarding the officers' awareness. Disputed due to the absence of the alleged testimony. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | |
| 162.    The current warning that the NarcoPouch has is not sufficient:<br><br>That note that you just read is misleading because it only talks about if it doesn't produce a positive response, but the problem is the false positives.  If it does reproduce a positive response, it should be sent to the lab for further testing.<br><br>They're well aware there's a lot of false positives, and in fact, based on that statement, they are only trying to have the negative ones go on for further testing when it's the positive ones that you want to screen out, the false positives.<br><br>Vredenburgh Dep. 51:6-52:6, Exh. 8. | Objection. Misstates testimony, evidence and facts.  The instructions state that all results should be sent to the lab for evidential analysis. SAFARILAND000055, Ex. 18 to Jun Decl. And, there was follow-up confirmatory testing done.  Ambriz Dep. at 56:20-57:7, 83:1-13, 94:11-17, Ex. E to Smelser Decl.<br><br>Objection. Outside scope of expertise and improper attempt to assert testimony pursuant to Rule 702. Lacks foundation, speculative, vague and ambiguous, unintelligible, irrelevant. Calls for a legal conclusion. The testimony is unintelligible and unsupported by the facts, including that everyone involved knew the seized substances had to be sent to the lab for confirmatory testing regardless and the seized substances were in fact sent. Also, Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl.

Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory.  Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl.  Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed.  Okorocha Depo. at 101:23-102:5, Ex. H to Smelser Decl. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied* |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | *Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). <br><br> Undisputed that the unintelligible, unqualified, and unsupported quoted testimony was stated by Vredenburgh at her deposition. Disputed as to all |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | other aspects, including the sufficiency of Safariland's warnings, instructions, and information provided, which is an incorrect legal conclusion as a matter of law pursuant to the sophisticated user and bulk seller doctrine. |
| 163.    Moreover, the instructions are conflicting when comparing the language to the front of the box to the back of the box, known as an anti-warning:<br>An anti-warning, where the prominent information conflicts with the fine print on the back. So there's italics on the back, but on the front, the large note conflicts with that.<br>Vredenburgh Dep. 52:19-53:6, Exh. 8. | Objection. Outside scope of expertise (Rule 702) to the extent Vredenburgh fails to understand chemistry, field drug tests, and clearly the term "presumptive."<br>*See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl.<br>Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23.  Vredenburgh is not a sophisticated law enforcement officer or an expert in police practices or forensic chemistry. Her obvious lack of understanding is irrelevant.  The language on the front of the box states it is a presumptive test for |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | methamphetamine. The language on the back of the box states it is the best presumptive field test in the industry. These two statements are no way contradicting as they both indicate the test is presumptive. Miller Decl. at Ex. B (Dckt. No. 50-2). Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). |
| | Disputed. |
| 164.    In Dr. Vredenburgh's report, she states the following: It is my opinion that since the packaging states that the kit is a "Methamphetamine & MDMA REAGENT," it is foreseeable that officers will misuse misleading positive results to assume it is positive finding for methamphetamine and MDMA, such as what occurred in this case; there are no warnings to the contrary. Dr. Vredenburgh Rule 26 Report | Objection. Outside scope of expertise, lacks foundation, speculative, and as such irrelevant. Best Evidence Rule – the document speaks for itself. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25- |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| (hereinafter "Vredenburgh Report"), p. 13, attached hereto as Exhibit 9. | 89:10, Ex. L to Smelser Decl. Therefore, her opinions about what a highly trained and sophisticated officer would know and understand are irrelevant, lack foundation, and entirely speculative. <u>Undisputed</u> that Vredenburgh made the unqualified and unsupported statement in her report. |
| 165.    Dr. Vredenburgh provided the following opinions on the failure to provide an effective warning on the drug test: **It is my opinion that the label affixed to the subject drug test kit failed to fulfill two basic requirements of an effective warning: (1) Hazard communication and (2) Influence protective behavior.** Safariland's instruction sheet and labeling that accompanies the product, which officers have available to refer to when the kits are in use, do not discuss the potential for misleading positive results. Furthermore, they did not include adequate warnings or instructional information to explain how the product should effectively be used so that law enforcement officers are not misled, | Objection. Vague, ambiguous, unintelligible, compound, lacks foundation, outside scope of expertise to the extent it discusses chemistry and police practices, procedures, and the law, Calls for a legal conclusion on subject matters Vredenburgh is not qualified to testify regarding, lacks foundation, speculative, argumentative, relies on hearsay, and irrelevant.  Best Evidence Rule – The document speaks for itself. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19- |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| which can lead to inappropriate incarceration, as occurred in this case. **Safariland's label failed to adequately inform users of the dangers associated with relying on the test kit (misleading positive results)**, the likely consequences and severity, and steps to take to avoid this consequence (inappropriate incarceration), as recommended by existing guidelines, such as the American National Standards Institute's Z-535 standard (ANSI, 1991; 1998). **Safariland failed to provide end users with the information they needed in order to use the test kit as it was intended to be used by the manufacturer, which resulted in the wrongful arrest and subsequent 6+ month incarceration of Michel.** Vredenburgh Report, p. 8-9, Exh. 9 (emphasis in original). | 22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Indeed, she fails to understand and use the term "incarceration" correctly, as Michel was never convicted of any crime.<br><br>Objection on the grounds that Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do |

1716326.1 / 128-004

- 93

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). <br><br> Undisputed that Vredenburgh made the unqualified and unsupported statement in her deposition in contradiction to Plaintiff's other retained experts. |
| 166.    Warnings should be designed to conform to ANSI standards as follows: This standard sets forth requirements for the design, application, use and placement of warning labels intended to identify potential hazards for a wide variety of products. According to this standard, the essential components of a warning include a signal word preceded by the safety alert symbol (**DANGER**/red background, **WARNING**/orange background, and **CAUTION**/yellow background), an optional symbol and a message panel. The message panel should contain text that identifies the type of hazard, its potential consequences, and | Objection. Vague, ambiguous, unintelligible, compound, outside scope of expertise regarding chemistry and field test kits, lacks foundation, and irrelevant.  Best Evidence Rule – The document speaks for itself. <br><br> Safariland is unable to respond as it does not understand this supposed fact and is only able to find portions of it in Vredenburgh's report.  Safariland does dispute to the extent Plaintiff attempts to state that Vredenburgh stated in her report that warnings must be conformed to ANSI standards. |

1716326.1 / 128-004

- 94

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| instructions how to avoid the hazard. If Safariland chose to comply with this standard, it would have provided a conspicuous warning that would have been clear and understandable to users of this device, and informed them about the misleading positive results that foreseeably be misused as false positive results (Type I error), which frequently occurs when using the test kit.<br><br>Vredenburgh Report, p. 9, Exh. 9<br><br>(emphasis in original). | |
| 167.   Informing the user is an<br><br>integral part of the warning:<br>The human factors literature clearly indicates that one of the purposes of a warning is to inform people of hazards so that undesirable consequences are avoided.16 Similarly, according to the FDA, concerning a "Duty to Inform," a "communication is adequate if it contains the information needed for effective decision making, users can access that information, and users can comprehend what they access . . . Evaluating whether a communication contains the information needed for effecting decision making . . . the test takes users' perspective, asking what they need to know to make decisions."<br>Vredenburgh Report, p. 9, Exh. 9. | Objection. Lacks foundation and outside scope of expertise (Rule 702) to the extent Vredenburgh fails to understand chemistry, field drug tests, police practices and procedures, probable cause, and forensic analysis. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl.<br><br>Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23.  Vredenburgh is not a sophisticated law enforcement officer |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | or an expert in police practices or forensic chemistry and she is not qualified to provide opinions on the required information to be communicated to these sophisticated users. There is also a complete break in the chain of causation as the Officers who had the opportunity to read the instructions and packaging and perform the tests were not involved in requesting the lab testing or the 6 month detainment of Michel. Garza Dep. at 46:18-47:7, 49:1-21, Ex. B to Smelser Decl.; Gibbons Dep. at 13:20-22, 22:1-8, Ex. C to Smelser Decl. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Disputed. |

1716326.1 / 128-004

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | |
| 168.      Safariland failed to provide an effective communication system.  This led to:<br><br>Kit users [not being] informed about important information regarding the use and potential consequences of misleading positive results. Thus, officers were misled into thinking that the field test result was positive for methamphetamine and acted with no urgency to confirm the misleading positive, resulting in Ms. Michel being falsely incarcerated for more than six months.<br><br>Vredenburgh Report, p. 10, Exh. 9. | Objection. Outside scope of expertise and improper opinion testimony under Fed. R. Evid. 702. Lacks foundation, speculative, and argumentative. Vredenburgh has absolutely no qualifications in police practices, policies, probable cause, criminal prosecution, or chemistry. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl.<br><br>Misstates the testimony of the Officers, the evidence, and facts.  The Officers testified they knew the results were not confirmation of methamphetamine and would have to be confirmed by a laboratory.  Garza Dep. at 46:9-15, 49:1-11, Ex. B to Smelser Decl.; Gibbons Dep. at 10:23-12:7; 40:8-16, Ex. C to Smelser Decl.<br><br>Objection on the grounds that |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | Vredenburgh contradicts Plaintiff's own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
|  | her other expert's testimony and opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Disputed. |
| 169.     Dr. Vredenburgh had the | Objection. Immaterial and Irrelevant |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| following opinion on Safariland's training materials: The training materials had effective warnings and instructions; however, this critical information was not passed downstream to the end-users (officers). Safariland should have provided the training materials to every law enforcement department automatically and provided a required sign-off sheet that indicating they received the training. Vredenburgh Report, p. 10, Exh. 9; *see also* Exh. 18. | pursuant to the sophisticated user defense and bulk seller doctrine. Opp. at 18- 23. Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).<br><br>Undisputed that the statement is included in Vredenburgh's report. |
| 170.    Safariland was aware of the potential for misleading results.  The Narco Pouch makes no mention of secondary amines on its package. Vredenburgh Report, p. 10, Exh. 9; *see also* Exh. 18. | Objection. Compound. Lacks foundation. Vague, ambiguous, unintelligible as to "misleading results." Outside scope of expertise, improper attempt to assert testimony pursuant to Rule 702 due to lack of qualifications and expertise in chemistry, field tests, forensic testing, and police practices.  Lacks foundation, speculative and irrelevant. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | <u>Unable to respond as to the undefined phrase "misleading results."</u> <u>Undisputed that secondary amines are not mentioned on the Narco Pouch packages.</u> |
| 171.    Moreover, Safariland did not maintain any database of reports of misleading positives, information that would be helpful to include in the training materials. Safariland must also provide a list of non-illicit substances that will test positive in the training materials. Vredenburgh Report, p. 10, Exh. 9. | Objection. Compound. Outside scope of expertise, lacks foundation, speculative, and irrelevant lay opinion on the grounds that Vredenburgh is not qualified to make such statements in regard to the proper training for and of law enforcement officers and what would need to be communicated to them. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Calls for a legal conclusion under the sophisticated user defense and bulk seller doctrine.<br><br><u>Disputed</u> as a matter of law pursuant to the sophisticated user defense and bulk seller doctrine. |
| 172.    There were several | Objection. Compound. Outside scope |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| PowerPoint training slides with important information not contained in the product labeling system. Safariland failed to communicate that information to the users and failed to require that users be provided with the manufacturer's training program. Vredenburgh Report, p. 10, Exh. 9. | of expertise, lacks foundation, speculative, and irrelevant lay opinion on the grounds that Vredenburgh is not qualified to make such statements in regard to the proper training for and of law enforcement officers and what would need to be communicated to them. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Calls for a legal conclusion under the sophisticated user defense and bulk seller doctrine.  Irrelevant as a matter of law pursuant to the sophisticated user defense and bulk seller doctrine.<br><br>Undisputed that the training materials included more information then labeled on the product.  Disputed in that Safariland communicated the information by way of the training slides.  Undisputed that Safariland does not mandate the contents of the federal government's training programs provided to its sophisticated employees |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | or have the authority to do the same. |
| 173.    It is the manufacturer's obligation to determine the hazards of each product and pass on information to those who are in an inferior position. It is the responsibility of downstream suppliers and distributors to pass on the MSDS and warnings in their labeling (29 CFR §1910.1200).<br><br>Vredenburgh Report, p. 11, Exh. 9. | Objection. Vague, ambiguous, and unintelligible as to "hazards," "inferior position," "downstream suppliers and distributors," and "MSDS." Lacks foundation, speculative, argumentative, and irrelevant as a matter of law pursuant to the sophisticated user defense and bulk seller doctrine. Calls for a legal conclusion. Outside scope of expertise and improper attempt to provide expert testimony on the law.<br><br>Undisputed that Vredenburgh makes the inapplicable legal conclusion in her report. Dispute the applicability to Safariland and this case. |
| 174.    Dr. Vredenburgh explained how manufacturers have historically used two strategies to weaken the impact of warnings:<br><br>1) Warn inadequately or not warn at all; | Objection. Lacks foundational facts, Improper attempt to state a Legal conclusion under R. 702, and irrelevant.<br><br>Undisputed that Vredenburgh makes such statements in her report. |

1716326.1 / 128-004

- 103

16-CV-0277-GPC-AGS

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| 2) produce media that deliberately misrepresent dangerous products as safe in order to contradict warnings (anti-warnings). Vredenburgh Report, p. 12, Exh. 9. | |
| 175.    Based on Safariland training materials and testimony, a warning could have been included on the NarcoPouch packaging (Figure 12) that would prevent incarceration decisions based on field tests. Vredenburgh Report, p. 12, Exh. 9; *see also* Exhibit K attached to Dr. Vredenburgh's deposition for the aforementioned "Figure 12," attached hereto as Exhibit 20. | Objection. Outside scope of expertise, Improper offer of testimony under R. 702, lacks foundational facts, speculative, argumentative, and irrelevant. No one was incarcerated based on a field test.  An Officer cannot incarcerate someone.  Only a court of law, judge or jury can incarcerate someone. Vredenburgh's report makes clear her lack of understanding of police practices, procedures, and policies and the fact that she is not qualified to offer the opinions provided in her report. *See* Vredenburgh Dep. at Ex. A, 21:19-22:4, 46:5-18, 48:2-13, 61:2-7, 69:14-22, 73:11-20, 75:4-10, 81:7-12, 88:25-89:10, Ex. L to Smelser Decl. Objection on the grounds that Vredenburgh contradicts Plaintiff's |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | own experts who are qualified to testify regarding the chemistry, police practices, probable cause, detainment, etc. Clark Depo. at 7:1-17, 27:25-28:17, Ex. J to Smelser Decl.; Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Plaintiff's police practices expert, retained to provide opinions as to police practices, stated that it is common knowledge that such tests are presumptive and must be confirmed by a laboratory. Clark Depo. at 47:15-24, 58:9-14, Ex. J to Smelser Decl. He also stated that it was entirely proper to arrest Michel. *Id.* at 10:25-11:1, 17:1-17, 52:17-21, 27:25-28:17. Mr. Okorocha agrees that it is appropriate to arrest someone based upon a field drug test. Okorocha Depo. at 92:3-15, Ex. H to Smelser Decl. Mr. Okorocha testified that it is common knowledge that a screening test is unconfirmed. *Id.* at 101:23-102:5. Plaintiff cannot hire an expert to contradict and create a dispute against her other expert's testimony and |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | opinions. *See e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-267 (9th Cir. 1991); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975).  The sham affidavit rule bars the creation of triable issues of fact by giving inconsistent statements in sworn written testimony (i.e., affidavits, interrogatory responses, or sworn admissions). *Cable v. City of Phoenix*, 2013 U.S. Dist. LEXIS 174847, *6-7 31-34 (D. Ariz. 2013). |
| | Objection. Immaterial and Irrelevant pursuant to the sophisticated user defense and bulk seller doctrine.  Opp. at 18- 23.  Disputes over matters that do not affect the right to dismissal under applicable substantive law are not "material" on a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). |
| | Undisputed that Vredenburgh made the |

| Plaintiff's Undisputed Material Facts and Supporting Evidence | Defendants' Response and Evidence |
|---|---|
| | unqualified and unsupported statement in her report in contradiction to Plaintiff's other retained experts. |

DATED:  August 11, 2017          YUKEVICH | CAVANAUGH


By:      /s/ Steven D. Smelser

Steven D. Smelser
Bobbie N. Eftekar
Lucas E. Rowe
Attorneys for Defendant  SAFARILAND, LLC

1716326.1 / 128-004