UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOYMA VANESSA MICHEL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; SAFARILAND, LLC, a Delaware limited liability company, AND DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | Case No.: 16CV277-GPC(AGS)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |

Before the Court is Plaintiff Doyma Vanessa Michel's ("Plaintiff" or "Michel") motion for reconsideration of the Court's order granting Defendant United States of America's ("Defendant" or "government") motion for summary judgment and denying Plaintiff's motion for partial summary judgment. (Dkt. No. 93.) Defendant United States of America filed an opposition. (Dkt. No. 99.) Plaintiff filed a reply. (Dkt. No. 100.) Based on the reasoning below, the Court DENIES Plaintiff's motion for reconsideration.

## Background

On October 31, 2017, the Court granted the United States of America's motion for summary judgment on all four causes of action, including negligence, false

imprisonment, negligent infliction of emotional distress and intentional infliction of emotional distress arising under the Federal Tort Claims Act ("FTCA"). (Dkt. No. 86.) The parties are intimately familiar with the facts in this case, and the Court incorporates by reference the detailed facts presented in the Court's order on the parties' cross-motions for summary judgment. (Id. at 3-11)

### A. Legal Standard on Motion for Reconsideration

Plaintiff moves for reconsideration pursuant to Federal Rule of Civil Procedure ("Rule") 59(e) and Local Civil. R. 7.1(i). (Dkt. No. 93; Dkt. No. 93-1 at 6.)

A district court may reconsider a grant of summary judgment under Rule 59(e). Sch. Dist. No. 1J, 1 Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993). The Court has discretion in granting or denying a motion for reconsideration. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9th Cir. 1991). A motion for reconsideration should not be granted absent highly unusual circumstances. 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

A motion for reconsideration, under Rule 59(e), is "appropriate if the district court (1) is presented with newly discovered evidence; (2) clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah County, Or., 5 F.3d at 1263; see also Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." McDowell v. Calderon, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (2d ed. 1995)). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n. 5 (2008) (citation omitted); see also Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) ("A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (citing Kona Enters. v. Estate of

Bishop, 229 F.3d 877, 890 (9th Cir. 2000)).

Local Civil Rule 7.1(i) states that in seeking reconsideration of an order, an attorney must set forth an "affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application." Local Civ. R. 7.1(i).

## Discussion

Plaintiff seeks the Court's reconsideration of its ruling in favor of the government on all four causes of action.

**A.  False Imprisonment**

In its order, the Court applied state law enforcement privilege to the false imprisonment cause of action, and concluded that the government was not liable for false imprisonment after criminal proceedings began on June 3, 2014 as it concerned Agent Bulman's actions. (Dkt. No. 86 at 23.) The Court also held that assuming that the private actor standard applied to the actions of Agent Bulman, there was still no evidence that his conduct or failure to act subjected the government to liability for false imprisonment. (Id.)

Plaintiff argues that the U.S. Supreme Court has held that state law governmental immunity does not apply to the United States in a Federal Tort Claims Act ("FTCA") action. Therefore, she contends that since state law immunity and federal statutory privilege do not apply, the government is liable for her false imprisonment for her continued detention after September 10, 2014, when Ambriz' GC/MS testing revealed the substance Michel was transporting was not a controlled substance.

Defendant counters that Plaintiff merely reiterates her arguments raised in the summary judgment motions and has not alleged new facts, has not demonstrated an intervening change of the law, and has not demonstrated clear error committed by the

3

Court. Therefore, she cannot demonstrate she is entitled to reconsideration of the Court's order.

The FTCA provides that the government "is liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In the parties' motions for summary judgment, the parties disagreed as to whether the state law enforcement privilege/immunity applied to a claim of false imprisonment by a federal law enforcement officer under the FTCA. Defendant argued that because law enforcement officers engage in a unique governmental function that has no private sector analogue, the law governing state law enforcement officers performing similar actions applies. In response, Plaintiff contended that the Government is liable under a "private person standard" or in this case, the standard for citizen's arrest as directed by the United States Supreme Court in United States v. Olson, 546 U.S. 43 (2005) and the Ninth Circuit case of Tekle v. United States, 511 F.3d 839 (9th Cir. 2007).

In her motion for reconsideration, Plaintiff repeats the same arguments raised on summary judgment, albeit with more detail and vigor, but essentially she disagrees with the Court's analysis. Moreover, the Court notes that it already addressed the private person standard she seeks the Court to apply in her motion for reconsideration. (Dkt. No. 86 at 23.)

Plaintiff presumes that if the private person standard applies, the United States is liable for Plaintiff's continued detention from September 10, 2014, when Ambriz completed the GC/MS test which showed no presence of a controlled substance, until her release on December 9, 2014.[1]

---

[1] Plaintiff incorrectly asserts that there is no immunity or limitation of liability for private persons accused of false imprisonment. In California, a private individual has lawful privilege to effectuate a citizen's arrest if there is probable cause to detain. Fermino v. Fedco., Inc., 7 Cal. 4th 701, 715 (1994) ("Merchants who detain individuals whom they have probable cause to believe are about to injure their property are privileged against a false imprisonment action."). The Court concluded that there was probable cause to arrest Michel by Officer Gibbons and the interrogation by Agent Bulman under the collective knowledge doctrine. Under the private person standard, Michel's arrest was lawful. The

4

Even if the Court erred in applying the state law enforcement immunity, Plaintiff has not demonstrated that applying a private person standard results in the government's liability for false imprisonment. In support, Plaintiff cites to one case, Fermino v. Fedco., Inc., 7 Cal. 4th 701, 715 (1994), where the California Supreme Court addressed an employee's claim that she was subject to false imprisonment by her employer. In Fermino, the employee was summoned to a windowless room and interrogated about an alleged theft. Id. at 706. Two managers and two security agents were in the room; they accused her of stealing, demanded that she confess and threatened to have her arrested unless she confessed and told her that witnesses to the incident were waiting in the next room when they were not. Id. at 707. Despite the employee's repeated requests to leave the room and to call her mother, they were denied. Id. She remained in the room for more than one hour. Id. The court recognized a merchant's privilege against a false imprisonment claim if the merchant has probable cause to believe an individual will injure property under California Penal Code section 490.5. Id. at 715. However, an employer's actions that go beyond a reasonable interrogation and detention constitute false imprisonment. Id. at 716. The court reversed the trial court's demurrer in favor of the employer. Id. at 724. The Court finds that Fermino is not applicable because it does not address a prolonged detention such as Michel's where there was probable cause to initially detain her and then she was transferred to the custody of jailers pursuant to criminal court proceedings.

California recognizes a false imprisonment claim based on a prolonged detention if a jailer knows or should have known of the "illegality of the imprisonment." Sullivan v. Cnty. of Los Angeles, 12 Cal. 3d 710, 717-18 (1974). A public entity which employs the jailer may be liable if jailers "have actual knowledge that the imprisonment of the

---

question is whether there was a continuing duty on Agent Bulman to investigate the validity of Plaintiff's detention.

plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." Id. at 719.

In Martinez, a plaintiff filed a complaint against the City of Los Angeles for false imprisonment based on a prolonged detention of 59 days spent in jail in Mexico. Martinez v. City of Los Angeles, 141 F.3d 1373, 1377 (9th Cir. 1998). The Ninth Circuit reversed the district court's summary judgment decision in favor of the City on the false imprisonment claim based on prolonged detention. Id. at 1381. The Los Angeles Police Department ("LAPD") initiated an investigation that led to the plaintiff's arrest in Mexico. Id. at 1377. After Martinez was arrested, his attorney presented the LAPD with evidence establishing the Mexican authorities arrested the wrong man. Id. at 1378. After receiving this information, the LAPD delayed investigating further. Id. at 1381. Martinez claimed that the LAPD officers allowed him to remain in jail in Mexico after they knew or should have known he was not the person who committed the crime. Id. at 1379. The Ninth Circuit concluded there were genuine issues of material fact whether the LAPD knew facts which would have caused a reasonable person to investigate the legality of Martinez's incarceration and seek his release. Id. at 1381. In a prolonged detention case, the question of liability depends on whether the defendant knew facts that the detained person is innocent or should have known facts that would have caused a reasonable person to investigate the validity of the detained person's detention.

In this case, Plaintiff has not demonstrated that Agent Bulman had facts that would have put him on notice to trigger a duty to investigate the drug test results. Plaintiff argues that when Agent Bulman interviewed Plaintiff on the day she was detained, on June 2, 2014, she told him the substance was not methamphetamine but was cuajo and both agreed that testing would reveal whether the substance was a drug or not. Based on this conversation, Plaintiff argues that Agent Bulman was aware that the lab test could exonerate Plaintiff and he had a continuing duty to investigate especially after September 10, 2014 when the results of the drug testing revealed she was innocent. First, a dispute whether a substance is illicit or not is most likely common at a border stop. Second,

Agent Bulman did not have actual knowledge about the results of the drug testing until December 3, 2014. He had no knowledge that Ambriz conducted GC/MS testing on September 10, 2014 and did not know the results of that test. There was nothing to put him on notice that triggered a duty to investigate the test results.

Next, Michel argues that Agent Bulman's failure to follow-up with the DEA lab at the request of two Assistant U.S. Attorneys was deliberate, willful and/or reckless. However, the Court concluded that Agent Bulman's failure to follow up with the AUSA's requests to check the lab results was allowable under the discretionary function exception doctrine. There is no indication that his failure to act was deliberate, willful and/or reckless. Plaintiff has not demonstrated that Agent Bulman had any actual knowledge that Plaintiff's prolonged detention was unlawful and there was nothing to put him on notice to trigger a duty to investigate the validity of the detention.

Under either standard, the private actor standard or applying state law privilege, Plaintiff has not demonstrated a genuine issue of fact that the government is liable for false imprisonment due to Agent Bulman's failure to act. Accordingly, the Court DENIES Plaintiff's motion for reconsideration on this issue.

**B.     Discretionary Function Exception**

In the Court's order on summary judgment, it held that the claims of negligence and negligent infliction of emotional distress claim based on Ambriz' conduct from September 29, 2014 when she definitively learned that the substance in the bottles was not a controlled substance, and December 9, 2014, when Michel was released from jail was protected by the discretionary function exception. (Dkt. No. 86 at 25, 27.) The Court explained that the "DEA lab's decision on which track, rushed or not rushed, to test the substance found in Plaintiff's vehicle was driven by policy considerations." (Id. at 27.)

In the motion, Plaintiff argues that Ambriz did not engage in a "permissible exercise of policy discretion" after September 10, 2014, when she completed GC/MS testing. She claims that while the DEA has discretion to determine how it prioritizes the

testing of drug samples, it does not have a policy about timely submission of drug test reports and notifying the case agent of the lab results. Defendant argues that Plaintiff merely "recycles" her arguments against Ambriz and has identified no new fact, no intervening change in law or clear error to justify a reconsideration of the Court's decision.

Here, the Court concluded, and Plaintiff does not dispute, that the decision not to rush the lab results was driven by policy considerations. That decision, that the substance be tested in the regular course of testing, and not rushed, includes the entire lab testing process, and not just the initial decision to not rush the test results. In 2014, a non-rushed lab report took about six to ninth months to test. (Dkt. No. 59-3, Ex. G, Malone Depo. at 55:7-20.) In the regular course of testing, Plaintiff's substance would have taken six to nine months. In this case, the testing was completed within five months, earlier than the normal testing time. The Court does not find Plaintiff's argument concerning the delay of the submission of the drug test reports to be persuasive.

Next, Plaintiff's argument that once Ambriz knew that the substance was not a controlled substance on September 10, 2014, Ambriz did not engage in a "permissible exercise of policy discretion" and the discretionary exception did not apply to Ambriz' decision to hold off submitting her final report until almost two months after testing was completed, is not legally supportive. In its order, the Court concluded that Ambriz did not have a duty to act because she "had no actual knowledge concerning the facts in Michel's underlying criminal case and no duty to promptly act to secure the release of Michel. Ambriz was not an investigating officer, as such, she was not involved in the detention and arrest of Michel, involved in the filing of the criminal complaint, aware of Michel's bail status or aware of the evidence in the possession of the Government supporting Michel's charges." (Dkt. No. 86 at 29 citing Dkt. No. 52-9, P's Index of Exs., Ex. 5, Ambriz Depo. at 124:3-15 (Ambriz testified she did not know whether Plaintiff was in custody or not).) Therefore, Ambriz did not know that the test results of September 2014 would have dissipated probable cause to detain Plaintiff.

8

As to Agent Bulman, Plaintiff also argues that his subjective and erroneous belief about a non-existent policy is not subject to the discretionary function exception. The Court concluded that Agent Bulman's failure to follow up with the DEA lab was based on a policy decision that rush requests were only made when there was a court date, a plea date or an extenuating circumstances, such as when the AUSA makes the rush request directly with the DEA lab, or a judge orders testing rushed. (Dkt. No. 86 at 11, 30.)

Plaintiff argues that Agent Bulman's subjective belief is a disputed fact. She asserts that Agent Bulman's belief that he could not make a rush request unless there was a trial date or plea agreement date is disputed by the DEA's rush request form and Ambriz' testimony. (Dkt. No. 93-1 at 26 n. 4.) The Court disagrees. The rush analysis request form includes a question that lists reasons that require a checkmark for the "nature of rush request" and include, grand jury, preliminary hearing, plea deadline, trial call, undercover buys and "other." (Dkt. No. 94-2, P's Suppl. Exs, Ex. A at 2.) These choices indicate that rush requests are made for specific reasons such as court dates. "Other" does not indicate that a rush request can be made without a time-sensitive reason. Moreover, the fact that Ambriz testified she receives rush request forms from agents and that she would have accommodated Bulman's request for a rush analysis does not support Plaintiff's argument that Ambriz routinely received rush request forms for cases without a trial date or plea agreement date or any extenuating circumstances. Plaintiff's facts only demonstrate that when a rush request is made, the lab policy expedites the testing. Here, according to Agent Bulman, there was no justification for a rush request since there was no court date. Plaintiff's facts do not show that Agent Bulman's understanding of the DEA lab policy is contradicted.

Further, in support, Plaintiff submits an email exchange between Agent Bulman and the AUSA concerning the lab testing of Michel's substance. (Dkt. No. 94-2, P's Suppl. Exs., Ex. B.) While the email exchange was referenced in Plaintiff's opposition to the government's separate statement of undisputed facts, (Dkt. No. 62-1, SSUF, No. 18),

the document was not submitted in the record. For the first time, Plaintiff submits the email exchange in her motion for reconsideration. On August 1, 2014, the AUSA wrote, "When you get a chance, would you send me your ROI in this case? And would you check on the status of the DEA lab report (although I know we're likely months away from that being ready)." (Dkt. No. 94-2, P's Suppl. Exs., Ex. B at 2.) In response, Agent Bulman wrote, "I've attached a scanned copy of the approved initial ROI. The DEA Lab received the liquid methamphetamine from the port seizure and from the storage unit seizure on July 3. I know that the lab is still severely backlogged by at least six months, but the samples are there waiting to be analyzed. If and when it becomes apparent that we will need to submit a rush analysis, I will do so, but due to their backlog, they have also been inundated with rush analysis requests." (Id.) The AUSA responded, "Thanks! No need for a rush request yet, I know how busy the lab is." (Id.) The email exchange notes the extreme backlog at the DEA lab and that a rush analysis request be made only when necessary. At that time, it was not necessary to make the rush request. The email exchange supports Agent Bulman's testimony on when rush requests are made.

Therefore, Agent Bulman's decision not to follow up with DEA lab based on the AUSA's request is subject to the discretionary function exception. The Court DENIES Plaintiff's request for reconsideration on this issue.

## C. Intentional Infliction of Emotional Distress

Plaintiff merely reargues her claim that Ambriz's conduct was based on her reckless disregard of the probability of causing emotional distress to Plaintiff, that is, she knew that the laboratory results would exonerate Plaintiff but failed to timely submit her lab report. She also claims that Agent Bulman did not exercise policy judgment but had an obligation to fulfill the AUSA's requests and had no authority to refuse to obtain the lab results. As discussed above, Agent Bulman was exercising his discretion in following DEA's prioritization policy concerning lab testing and Plaintiff did not demonstrate that he acted with reckless disregard to cause her emotional distress. As to Ambriz, the Court concluded that the claim was barred under 28 U.S.C. § 2680(h) since the claim for

intentional infliction of emotional distress is based on facts to support the false imprisonment cause of action and her injuries originate from this claim which is explicitly exempt under the FTCA. Plaintiff has not demonstrated clear error to justify reconsideration. The Court DENIES Plaintiff's motion for reconsideration on the intentional infliction of emotional distress cause of action.

## Conclusion

Based on the above, the Court DENIES Plaintiff's motion for reconsideration. The hearing set for February 15, 2018 shall be **vacated**.

IT IS SO ORDERED.

Dated: February 13, 2018

Hon. Gonzalo P. Curiel
United States District Judge